**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 3 2000**

**PATRICK FISHER**
**Clerk**

PUBLISH

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

ANDREA OPAL HENO,

    Plaintiff-Appellee and Cross-
    Appellant,

vs.

SPRINT/UNITED MANAGEMENT
COMPANY, a Kansas corporation,

    Defendant-Appellant and Cross-
    Appellee,

    and

JOHN LYSINGER; GARY
CROWDER; DON LIBBY

    Defendants and Cross-
    Appellees.

Nos. 98-1085
98-1093
98-1154

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. No. 95-WY-3233-WD)

William S. Finger (and Darrell Damschen, with him on the briefs), Frank &
Finger, P.C., Evergreen, Colorado, for Plaintiff - Appellee.

Dale R. Harris (and Janet A. Savage and Cynthia R. Kok, with him on the briefs),
Davis, Graham & Stubbs, L.L.P., Denver, Colorado, for Defendant - Appellant.

Before **SEYMOUR**, Chief Judge, **TACHA**, and **KELLY**, Circuit Judges.

**KELLY**, Circuit Judge.

This appeal and cross appeal arise from an employment discrimination action brought under Title VII and 42 U.S.C. § 1981 against Defendants Sprint/United Management Company ("Sprint") and various individuals. Judgment was entered against Sprint, but in favor of the individual defendants. We affirm in part, vacate in part, and remand for a new trial.

## Background

Plaintiff Andrea Heno is a woman of mixed racial background (Creole and other) who principally identifies herself as a black person. In March 1991, she began work as a sales representative in Sprint's inside sales department. Between 1992 and 1994, Ms. Heno received several awards recognizing her as an outstanding salesperson, and was promoted to senior sales representative. Her immediate supervisor in the sales department was Don Libby, the sales supervisor.

In July 1994, Ms. Heno, along with four other applicants, applied for a sales supervisor position. Don Crowder, the sales manager, interviewed the five applicants and selected Ms. Heno and Allison Ordway, a white woman, as finalists who would proceed to a further round of interviews. During this final

round, both Ms. Heno and Ms. Ordway interviewed a second time with Mr. Crowder, as well as with John Lysinger, the group manager. Based on these interviews, Ms. Ordway was selected for the position. On August 1, 1994, Ms. Heno filed a charge of discrimination with the EEOC against Sprint based on a failure to promote.

During August and September, 1994, Ms. Heno was away from the office on sick leave and short-term disability. When she returned, her desk and personal belongings had been moved to a different location. Ms. Heno alleges that this incident as well as the unfriendly attitudes of Mr. Libby and the other employees created a hostile work environment. On December 5, 1994, she quit her job with Sprint.

Ms. Heno filed the current action against Defendants Sprint, Libby, Crowder, and Lysinger, alleging violations of Title VII and 42 U.S.C. § 1981, as well as constructive discharge. The district court granted summary judgment in favor of Messrs. Lysinger and Crowder on the retaliatory hostile environment claim, and for Mr. Libby on the failure to promote claim. I R. at 35-36. At the close of Ms. Heno's case in chief, the district court further granted judgment as a matter of law to Sprint and Mr. Libby on the hostile environment claim and to Lysinger on the failure to promote claim. VIII R. at 1788; IX R. at 2043. Finally, the district court granted judgment as a matter of law and dismissed Ms.

Heno's constructive discharge claim. IX R. at 2044. Thus, the only issues to go to the jury were the Title VII failure to promote claim against Sprint, and the § 1981 failure to promote claims against Sprint and Mr. Crowder.

The jury found against Sprint on both the Title VII and § 1981 claims and awarded $150,000 in damages. However, in a special verdict form, they determined that race was not a motivating factor in Mr. Crowder's promotion decision and, therefore, he was not liable. The district court determined that it was inappropriate to give an award for both Title VII and § 1981 claims arising from the same factual conduct and struck the § 1981 verdict without reducing the award of damages.

Sprint contests the judgment based upon: (1) inconsistent jury verdicts; (2) improper application of the __Batson__ test in overturning a peremptory challenge; and (3) multiple evidentiary errors. Ms. Heno cross-appeals with eight claims of error regarding the dismissal of her retaliation and constructive discharge claims, judgment for Sprint on the § 1981 claim, judgment in favor of Messrs. Lysinger and Crowder, and attorneys' fees and costs. We deal with each claim in turn.

## Discussion

I. Inconsistent Verdicts

The jury was provided with a special verdict form on which the following

question (1a) was asked:

> Has Plaintiff proven that Plaintiff's race was, based upon a preponderance of the evidence, a motivating factor in the decision of Sprint not to promote the Plaintiff?

I R. at 167. The jury answered in the affirmative. Question 2a asked the same question in regard to Mr. Crowder and the jury answered: "No."

Sprint brought a post-trial motion for judgment as a matter of law, arguing that the verdicts were clearly inconsistent because a corporation can only act through its agents, and Mr. Crowder was the agent who made the decision not to promote. If Crowder's decision was not based upon race, then it was impossible for Sprint's decision to have been based on race. The trial court denied the motion.

We note at the outset that Sprint has not waived this issue by failing to raise it before the jury was dismissed. Although a party waives a claim of inconsistent verdicts based on a general jury verdict under Fed. R. Civ. P. 49(b), if not timely raised, this rule does not apply to special verdicts under Fed. R. Civ. P. 49(a). "[W]hen the verdicts are special verdicts a party is not required to object to the inconsistency before the jury is discharged in order to preserve that issue for a subsequent motion before the district court." Thompson v. State Farm Fire & Casualty Co. , 34 F.3d 932, 944 (10th Cir. 1994) (citing Bonin v. Tour

West, Inc. , 896 F.2d 1260, 1263 (10th Cir. 1990) (per curiam)).

Review of the denial of a motion for judgment as a matter of law is de novo. See Townsend v. Daniel, Mann, Johnson & Mendenhall , 196 F.3d 1140, 1144 (10th Cir. 1999). "When reviewing claims that a jury verdict is inconsistent, we must accept any reasonable view of the case that makes the jury's answers consistent." Patton v. TIC United Corp. , 77 F.3d 1235, 1241 (10th Cir. 1996).

Mr. Crowder and Mr. Lysinger were the only two Sprint agents who took part in conducting the promotion interview process. Although Mr. Lysinger interviewed Ms. Heno as part of this process, he did not make the actual promotion decision. The trial court specifically found that "plaintiff has failed to allege direct personal involvement – or establish direct personal involvement on the part of Mr. Lysinger." IX R. at 2043. Based on this finding, the court granted judgment as a matter of law to Mr. Lysinger on plaintiff's § 1981 failure to promote claim. [1]

The issue of Sprint's liability under Title VII is coextensive with Mr.

---

[1]Ms. Heno challenges this determination on appeal. However, after a review of the entire record, we are convinced that the trial court was correct. Even viewing the evidence in the light most favorable to Ms. Heno, there is insufficient evidence to show that Mr. Lysinger was personally involved in making the decision not to promote. Ms. Heno herself testified that Lysinger told her that "this was Gary[ Crowder's] promotion." VI R. at 1230.

Crowder's liability under § 1981.  First, there is nothing to distinguish the Title

VII and the § 1981 claims; they are based on the same facts.  "'The elements of

each cause of action have been construed as identical, and a jury verdict on the

issue of liability . . . under § 1981 is normally conclusive on the issue of liability

in a parallel action under Title VII.'"  Thomas v. Denny's Inc., 111 F.3d 1506,

1513 (10th Cir. 1997) (citation omitted).

Second, as the jury was properly instructed, "Sprint is a corporation. . . .

[and] may act only through natural persons as its agents or employees."  I R. at

198.  The Eleventh Circuit has noted:

> Undoubtedly, a verdict exonerating an agent while
> holding his principal liable for his actions would be an
> inconsistent resolution of factual questions. . . .  We
> have no doubt that a judgment holding a principal liable
> in a Title VII [disparate impact case] would be
> inconsistent with a verdict exonerating under § 1981 the
> employees from whose actions Title VII liability
> derives.

Lincoln v. Board of Regents, 697 F.2d 928, 934-35 (11th Cir. 1983).  See also

Hinton v. City of Elwood, 997 F.2d 774, 782 (10th Cir. 1993) (holding that a city

may not be held liable under § 1983 "where there was no underlying

constitutional violation by any of its officers."); de Feliciano v. de Jesus, 873

F.2d 447, 450 (1st Cir. 1989) (holding that there was no basis for liability of

government agency once individual decision maker was released by jury verdict).

Ms. Heno argues that there are several ways in which the jury verdicts could be interpreted as consistent. First, the jury instructions repeatedly stated that the jury could find that "Sprint and/or Gary Crowder intentionally discriminated" against Ms. Heno. See I R. at 202, 204, 205. This instruction, however, was not meant to embrace every permutation regardless of the evidence. To be sure, the jury could be consistent if it found that both Sprint and Crowder were liable; that neither was liable; or that Crowder was liable for discriminating, but Sprint was not because Crowder acted outside the scope of his authority. However, the jury could not reconcilably find that Crowder did not discriminate but that Sprint did. As the trial court correctly stated, "I don't know how I can separate the conduct of the corporate employer from [Mr. Crowder's] conduct." IX R. at 2045. To the extent the jury instruction permitted this result, it was not supported by the evidence in this case.

Second, Ms. Heno argues that the jury could have found that Sprint had established a policy of not hiring blacks or promoting them only as a last resort. This argument ignores causation. Regardless of Sprint's underlying hiring and promotion policies, the jury found that Crowder did not consider race as a motivating factor in the decision not to promote. Therefore, he did not follow Sprint's allegedly discriminatory policy, and the alleged policy cannot reconcile the verdicts.

Third, Ms. Heno argues that Sprint only used subjective criteria in making its promotion decisions and this practice was discriminatory. However, certain cases dealing with subjective employment criteria merely recognize that discrimination is theoretically more probable when there are no objective employment standards. Whether Sprint used subjective or objective criteria is irrelevant given the jury finding that Crowder did not discriminate.

Finally, Ms. Heno asserts that Sprint could have been found liable because "Sprint's Human Resources Department had responsibilities relating to promotions and disregarded complaints about discriminating practices, including those of Andrea Heno." Aplee. Br. at 25. The Human Resources Department was not involved in the actual promotion decision. Therefore, even if the department failed to properly address Ms. Heno's complaint, this simply is not a basis for finding Sprint liable on a failure to promote claim.

The special verdicts are clearly inconsistent and cannot stand. Ordinarily, a trial judge should point out apparent inconsistencies in the special verdicts to the jury and ask the jury to resolve the conflict. See de Feliciano, 873 F.2d at 451-52. This was not done and the alternative is to send the case back for a new trial. See Unit Drilling Co. v. Enron Oil & Gas Co., 108 F.3d 1186, 1191 (10th Cir. 1997); see also Bonin, 896 F.2d at 1263; Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2510 at 207 (West 1995) ("If the jury's

answers are inconsistent with each other even when the trial judge views them in the most generous way to avoid such a conclusion, a new trial . . . ordinarily is required.").

Sprint argues, however, that the inconsistent verdicts should be resolved by granting judgment as a matter of law in its favor. It relies heavily upon the First Circuit's decision in de Feliciano v. de Jesus, 873 F.2d 447 (1st Cir. 1989), which involved a claim of termination based on political discrimination. In that case, the court held that the jury verdicts were inconsistent and consequently ordered judgment in favor of the employer. de Feliciano acknowledged a split in authority on this point, but regardless, cases must be read against their facts and de Feliciano is distinguishable. First, the court noted that "we cannot blame the district court's failure to send the jury back to reconsider any more on the defendants than on the plaintiffs" because the trial court raised the issue itself and held that the verdicts were reconcilable. Id. at 451. If Sprint had raised the issue before the jury was dismissed, the inconsistent verdicts could simply have been resolved by sending the matter back for clarification. Instead, no corrective action was taken. Second, in de Feliciano, the plaintiffs did not appeal the judgment or ask for a new trial regarding the individual defendant. In the present case, Ms. Heno requests a new trial against Crowder based on allegedly faulty jury instructions.

Most convincingly, however, it is impossible for this court to read the collective mind of the jury and determine why it answered the special verdict form in the way that it did. The difficulty in granting judgment as a matter of law is in determining whether the jury was engaged in "honestly and in good faith exonerating the servant and capriciously rendering a verdict against the master, or honestly and in good faith finding the servant guilty of [discrimination], but [] capriciously exonerat[ing] him because of the financial ability of the employer to better pay the judgment." Eckleberry v. Kaiser Found. N. Hosps. , 359 P.2d 1090, 1095 (Or. 1961). See also Freeman v. Chicago Park Dist. , 189 F.3d 613, 615 (7th Cir. 1999) ("There is no priority of one answer over another when the verdicts are inconsistent."); Danner v. National Med. Mkt'g, Inc. , 944 F.2d 791, 794 (10th Cir. 1991) (holding that trial judge should have granted new trial, rather than judgment notwithstading the verdict because the judge could not know in what order the jury reached its inconsistent verdicts). We will not intrude on the province of the jury; therefore, a new trial is required.

II. Batson claim

In the alternative, Sprint also argues that a new trial is necessary because the trial judge misapplied the three part test of Batson v. Kentucky , 476 U.S. 79 (1986), in overturning one of its three peremptory challenges. Specifically, Sprint argues that the judge combined steps two and three, thereby impermissibly

shifting the burden of proof away from the party opposing the challenge.

"In our review of the district court's disposition of the Batson claim, we analyze [Sprint's] proffered racially neutral explanation as a legal issue, de novo," and review the ultimate finding of discrimination for clear error. See Hidalgo v. Fagen, Inc., No. 99-1033, 2000 WL 289609, at *4 (10th Cir. March 20, 2000). The three-part Batson test was clearly laid out by the Supreme Court in Purkett v. Elem, 514 U.S. 765 (1995).

> Under our Batson jurisprudence, once the opponent of a peremptory challenge has made out a prima facie case of racial discrimination (step one), the burden of production shifts to the proponent of the strike to come forward with a race-neutral explanation (step two). If a race-neutral explanation is tendered, the trial court must then decide (step three) whether the opponent of the strike has proved purposeful racial discrimination.

Id. at 767. See also Hurd v. Pittsburg State Univ., 109 F.3d 1540, 1546 (10th Cir. 1997). The Court clearly stated that during this test the burden of persuasion always remains with the party opposing the strike. Elem, 514 U.S. at 768.

In this case, the district court spent a vast amount of time discussing the Batson issue with counsel. See II R. at 516-81. Ms. Heno met her prima facie case by showing that Sprint used a peremptory to strike the only black juror on the panel. After plaintiff had challenged the strike, the court said "I'm going to require the defendant to justify the race-neutral basis for this decision . . . ." Id.

- 12 -

at 517.  The court also noted that "[o]nly after the plaintiff has established a prima facie case does the burden shift to the defendants to make a clear and reasonably specific explanation for challenging the minority juror.  That's the law."  Id. at 522.

Sprint claims that the court's statements demonstrate that the judge impermissibly shifted the final burden.  However, when these statements are read in light of the entire Batson proceedings, it is clear that the judge correctly applied the three-part test.  The first statement was made directly after the challenge to the strike was brought and reflected the judge's intent to require Sprint to articulate a race-neutral reason.  Although the second statement talks about shifting the "burden," it is clear from the trial transcript that the court was referring to the burden of production.  In overturning Sprint's strike, the court stated that while "[i]t's difficult to discern what the members of the Supreme Court meant when they said the burden rests with the plaintiff," in this case, "I think the burden was met."  Id. at 569.  This was a proper application of the format of the three-part Batson test.

A trial court should ask challenging counsel to respond to the race-neutral reasons which have been proffered.  See United States v. Joe, 928 F.2d 99, 103 (4th Cir. 1991) (noting that "the court should provide defendant with the opportunity to establish pretext" after a facially neutral reason is given); see also

<u>United States v. McMillon</u>, 14 F.3d 948, 952 (4th Cir. 1994) (same).  This clearly defines the opposing positions, facilitates the district court's task by separating the second and third steps of the <u>Batson</u> test, and greatly aids appellate review. The court did so in this case.  <u>See</u> II R. at 558-61.

However, although it properly applied the procedural framework of the <u>Batson</u> test, the trial court erred in not accepting Sprint's race neutral reasons. When asked to justify the strike, Sprint's counsel immediately articulated the following five reasons: the juror (1) had been a plaintiff in a lawsuit; (2) felt he had been discriminated against in his workplace; (3) was a member of various environmental groups, such as Greenpeace, Sierra Club, and Wildlife Club; (4) felt that affirmative action was necessary; and (5) demonstrated through his body language and answers that he was uncomfortable being the only black member on the jury.  II R. at 530-31.

The trial court specifically refused to accept at least two of these five reasons as race-neutral.  In overturning Sprint's strike, the court stated: "The discrimination and affirmative action basis are bogus.  If I accept that, if any judge accepts that, then you – you eviscerate the whole concept of <u>Batson</u> challenge.  That just cannot be what the Supreme Court intends."  <u>Id</u>. at 568. Earlier statements by the trial judge reveal the reasons for refusing these two race-neutral reasons.

> Following the Supreme Court's rationale to its logical conclusion, what will the Court think that a trial – if trial judges like me say, okay, every time a black person says they have been discriminated against and every time a black person says they favor affirmative action that those are bases to establish a race-neutral selection for that person to be removed peremptorily? . . . I can't imagine the Court is going to find that a very logical approach.

II R. at 544. [2]

The trial court determined that strikes based upon a juror's support of affirmative action and feelings of workplace discrimination cannot be racially neutral reasons. This was error. Support for affirmative action and feelings that one has been discriminated against in the workplace are not automatically linked to race; they are subjective beliefs that may be held by a heterogeneous group.

An explanation for the strike is race-neutral so long as the reason is related to the case and "does not deny equal protection." Elem, 514 U.S. at 769; see also Hernandez v. New York, 500 U.S. 352, 360 (1991) (an explanation is deemed race-neutral "[u]nless a discriminatory intent is inherent in the prosecutor's explanation."). It is, after all, the racial motives of the attorney attempting to exercise the challenge that is being evaluated, not whether the reason given or the

---

[2]The court also asked: "Nine out of ten black Americans approve of affirmative action approximately. Does that mean that 90 percent of black Americans who are seated as veniremen in a jury panel are legitimately subject to being challenged because they believe affirmative action is a positive development in the law?" II R. at 531.

manner in which the reasons were articulated conforms to the court's idea as to how voir dire should proceed. Support for affirmative action and feeling discriminated against in the workplace are reasons clearly related to an employment discrimination case. As Sprint's counsel told the court, any juror that "felt they had been the victim of discrimination, whether it was gender, race, religion, age, what have you, that that perception was sufficient to make them unable to serve as a juror and evaluate the evidence fairly." II R. at 567. Moreover, both of these reasons are clearly race-neutral and do not offend equal protection; neither is "'a characteristic that is peculiar to any race.'" Elem, 514 U.S. at 769 (citation omitted); see also Hernandez, 500 U.S. at 361 (removal criterion which would likely have a disproportionate impact on Latino jurors is not a per se violation of Equal Protection Clause). [3] The trial court erred as a matter of law in refusing to accept either of these reasons as race-neutral at step two. Although the court found that the remaining reasons were pretextual, it is impossible to say on this record whether that determination was improperly tainted by the prior erroneous discounting of Sprint's other race-neutral reasons.

---

[3]We do not suggest that the disparate impact of peremptory challenges is not a valid criterion for the trial court to consider at step three. See Hernandez, 500 U.S. at 363 ("If a prosecutor articulates a basis for a peremptory challenge that results in the disproportionate exclusion of members of a certain race, the trial judge may consider that fact as evidence that the prosecutor's stated reason constitutes a pretext for racial discrimination.").

Because a new trial is required by the inconsistent verdicts, a separate remedy for the error in applying Batson is not necessary.

III.    Miscellaneous Evidentiary Issues

We need not address Sprint's claims of evidentiary error at length given our disposition of the case. However, for benefit of the district court and the parties on remand, we make the following observations. First, only the Title VII claim against Sprint and the § 1981 claims against Sprint and Crowder are at issue on retrial. Any evidence which was permitted based on the retaliatory hostile environment or constructive discharge claims is no longer relevant.

Second, anecdotal evidence of discrimination should only be admitted if "the prior incidences of alleged discrimination can somehow be tied to the employment actions disputed in the case at hand." Simms v. State of Oklahoma, 165 F.3d 1321, 1330 (10th Cir. 1999). Plaintiff can meet this requirement by showing that the same supervisors were involved in prior discriminatory employment actions. Id. Third, the district court should carefully scrutinize the time frame in which other alleged acts of discrimination occurred. Discriminatory incidents which occured either several years before the contested action or anytime after are "not sufficiently connected to the employment action in question to demonstrate pretext." Id. at 1331 (holding that discriminatory event which took place three years before was too remote); see also Cooley v.

- 17 -

Carmike Cinemas, Inc., 25 F.3d 1325, 1330 (6th Cir. 1994) (holding that district court should evaluate whether other acts were proximate to relevant action). Finally, stray racial comments should typically not be admitted unless the plaintiff can link them to personnel decisions or the individuals making those decisions. See Figures v. Board of Pub. Utilities, 967 F.2d 357, 361 (10th Cir. 1992); see also Rea v. Martin Marietta Corp., 29 F.3d 1450, 1457 (10th Cir. 1994) (requiring causal nexus between isolated comments and challenged action).

In all probability, the trial court will once again be called upon to determine the admissibility of the so-called "Nigger Application for Employment" which was discovered on the desks of one or more Sprint employees. I R. at 29G. Although the court did not allow this document to go to the jury, it allowed counsel to discuss it with witnesses as a "one page racially defamatory document." IV R. at 745-46. Shrouding this document in mystery by continually referring to it as a racially defamatory document while simultaneously refusing to admit it in evidence could only serve to heighten the jury's view of the document's importance. On remand, the court should require Ms. Heno to lay a sufficient foundation for establishing a causal nexus between Sprint, particularly through Mr. Crowder, and this document. Given the highly prejudicial nature of the document, such a foundation should be substantial. See Robinson v. Runyon, 149 F.3d 507, 511 (6th Cir. 1998) (holding that

"Nigger Employment Application" should have been admitted based on evidence that document was widely circulated throughout office on several occasions and supervisors were seen reading the document and laughing). If such a foundation is laid, and the district court decides that the probative value of the document is not substantially outweighed by the danger of unfair prejudice, Fed. R. Evid. 403, the document should be admitted in its entirety.

Sprint also challenges the admission of testimony by Dr. Johnson that Ms. Heno's ovarian cysts were caused by job-related stress. Dr. Johnson had not been designated as an expert witness, although no objection was made on this basis at the time of his testimony. When an objection was later raised, the district court realized the error, and this issue should not arise on retrial.

### Plaintiff's Cross-Appeal

Although this case must be remanded for a new trial, there is no need for the trial court to rehear the claims on which it granted judgment as a matter of law.

### I. Lysinger Dismissal

As previously noted, Mr. Lysinger was correctly dismissed from the case as a matter of law because Ms. Heno failed to "establish [his] direct personal involvement." IX R. at 2043.

II.    Retaliation and Constructive Discharge

Second, Ms. Heno challenges the dismissal of her retaliation and constructive discharge claims. Review of the grant of a motion for judgment as a matter of law is de novo. In order to make a prima facie showing of retaliation, Ms. Heno was required to show: (1) that she was engaged in opposition to Title VII discrimination; (2) that she was subjected to an adverse employment action; and (3) a causal connection existed between the adverse employment action and her protected activity. See Sanchez v. Denver Pub. Schs., 164 F.3d 527, 533 (10th Cir. 1998). The trial court found that Ms. Heno had failed to show that Sprint took any "adverse employment action" against her. VIII R. at 1788.

Although the Tenth Circuit liberally defines an "adverse employment action," its existence is determined on a case by case basis and does not extend to "'a mere inconvenience or an alteration of job responsibilities.'" Sanchez, 164 F.3d at 532 (citation omitted). Viewed in the light most favorable to the plaintiff, Ms. Heno showed that (1) her desk was moved to a different location; (2) her telephone calls were monitored; (3) Mr. Libby and other employees acted in a "chilly" manner towards her, which made her feel isolated; (4) the Human Resources Department refused to further investigate her complaint once they found out she had filed an EEOC complaint; and (5) Mr. Libby suggested that she might wish to transfer to a different Sprint department because the inside

sales department was shifting to a commission format on which Ms. Heno had previously struggled.

These facts do not rise to the level of an adverse employment action. "Retaliatory conduct other than discharge or refusal to rehire is . . . proscribed by Title VII only if it alters the employee's 'compensation, terms, conditions, or privileges of employment,' or 'adversely affect[s] his [or her] status as an employee.'" Id. at 533 (citations omitted). Ms. Heno was working in the same job, for the same pay, with the same benefits. Moving her desk, monitoring her calls, being "chilly" towards her, and suggesting that she might do better in a different department simply did not affect Ms. Heno's employment status. The district court was correct in dismissing the retaliation claim.

In order to survive a motion for judgment as a matter of law on the constructive discharge claim, Ms. Heno "must allege facts sufficient to demonstrate under an objective test that a reasonable person would have viewed her working conditions as intolerable." Jeffries v. Kansas, 147 F.3d 1220, 1233 (10th Cir. 1998). Ms. Heno relies on the same evidence as her retaliation claim, and makes much of the fact that she was suffering from depression, which she attributes to her work conditions. However, given the objective standard, an employee's subjective feelings or beliefs are not relevant in a constructive discharge claim. Id. Therefore, Ms. Heno's feelings that she was being isolated

cannot suffice for proof. "If an employee resigns of her own free will, even as a result of the employer's actions, that employee will not be held to have been constructively discharged." Id. The conditions in Sprint's workplace were not such that a reasonable employee would have felt they had no choice but to quit, and Ms. Heno's constructive discharge claim was properly dismissed.

III.    Jury Instruction No. 14

Plaintiff argues that a new trial against Mr. Crowder is necessary because Jury Instruction No. 14 allegedly conflicts with Randle v. City of Aurora, 69 F.3d 441 (10th Cir. 1995). In the context of an instruction patterned on McDonnell Douglas, the instruction stated:

> Once Defendants have offered a nondiscriminatory reason or rationale for not promoting Plaintiff, Plaintiff must prove, by a preponderance of the evidence, that Defendants' proffered reason was only a pretext (an excuse) for discrimination.

I R. at 201. Ms. Heno argues that she was not required to prove that pretext was an excuse for discrimination; a mere showing of pretext was enough.

This argument misinterprets the context of the Randle holding. Specifically, Randle held that proof that defendant's proffered reasons were pretextual was sufficient, without evidence of actual intent, to survive summary judgment. Id. at 453. The court went on to note, however, that once plaintiff had survived summary judgment, she must demonstrate actual discrimination.

"At trial, the plaintiff must prove illegal discrimination either (1) inferentially by showing that the proffered reason is a pretext for discrimination; and/or (2) directly by offering direct evidence of discrimination." Id. (emphasis added). See also Considine v. Newspaper Agency Corp., 43 F.3d 1349, 1367 (10th Cir. 1994) ("If a jury chooses to believe that a proffered explanation is pretextual, the jury must still go on to decide whether it is a pretext for discrimination."). Although we have questioned the utility of instructing the jury based upon the entire McDonnell Douglas format, see Messina v. Kroblin Transp. Sys. Inc., 903 F.2d 1306, 1308 (10th Cir. 1990), Jury Instruction No. 14 correctly stated the law.

IV. Other Claims

Ms. Heno further argues that the district court erred in granting Sprint judgment as a matter of law on the § 1981 claim subsequent to the jury verdict. The trial court held that both the Title VII claim and the § 1981 claim were based on the same facts, and therefore the § 1981 claim did not have an independent basis of its own. In making this determination, the court did not consider Meade v. Merchants Fast Motorline, Inc., 820 F.2d 1124 (10th Cir. 1987) (per curiam), nor the 1991 Civil Rights Act, particularly 42 U.S.C. § 1981a(a)(1) & (b)(4). In Meade, the circuit held "that [a] plaintiff may pursue his cause of action under § 1981 for private employment discrimination despite the applicability of Title

VII to the same conduct," implicitly rejecting the notion that a Title VII plaintiff must plead and prove an independent basis for a § 1981 claim. Meade, 820 F.2d at 1127. This conclusion is reinforced by the 1991 Civil Rights Act, which allows limited compensatory and punitive damages under Title VII where a plaintiff cannot recover under § 1981, 42 U.S.C. § 1981a(a), and provides that certain limitations and exclusions on damages that would apply under Title VII do not apply under § 1981, 42 U.S.C. § 1981a(b)(4). See Kim v. Nash Finch Co., 123 F.3d 1046, 1063 (8th Cir. 1997).

It is not necessary to address Plaintiff's arguments regarding punitive damages. The district court refused to allow the issue of punitive damages to go to the jury because plaintiff failed to present any evidence of malice or reckless indifference. I R. at 258. Circuit courts have considerable discretion concerning the scope of a remand, see Morrison Knudsen Corp. v. Fireman's Fund Ins. Co., 175 F.3d 1221, 1255 (10th Cir. 1999), and because we are remanding the compensatory portion of the case, Plaintiff may adduce additional or different evidence and is not foreclosed from seeking punitive damages. See Mason v. Texaco, 948 F.2d 1546, 1554 (10th Cir. 1991) ("A punitive damage claim is not an independent cause of action or issue separate from the balance of a plaintiff's case."). Moreover, the allegations of error regarding wage loss, attorney fees, costs and pre-judgment interest are rendered moot.

The case is REMANDED to the district court for a new trial on the Title VII failure to promote claim against Sprint and the § 1981 claims against Sprint and Mr. Crowder.  We AFFIRM the grant of judgment as a matter of law on the retaliation and constructive discharge claims, and on the Title VII failure to promote claim against Mr. Lysinger.

Nos. 98-1085, 98-1093, 98-1154, *HENO v. SPRINT*

**SEYMOUR**, Chief Judge, concurring.


The district court here devoted careful consideration to a difficult and bitterly disputed lawsuit. Although I am in agreement with the majority opinion as far as it goes, two of the issues raised on appeal indicate that our case law has not provided adequate guidance on important and recurring problems. Accordingly, I write separately to address two points that in my view require further analysis.

With regard to Sprint's *Batson* claim, defense counsel supported her strike of the only black juror on the panel for five reasons, two of which were the juror's comments that he had suffered racial discrimination in the workplace,[1] and that he believed in affirmative action.[2] Although the record leaves me in some doubt, for purposes of this discussion I agree with the majority that the district

---

[1] He was a theatrical designer who worked for a local dance company that often toured out of the state and out of the country. He was in charge during these tours and stated that he was often not recognized as being in charge due to the fact that he was black.

[2] Defense counsel placed great reliance on the black juror's statement that he supported affirmative action. A review of the record reveals that this juror in fact stated "I felt [affirmative action] was very necessary when it was instituted, and I still believe it is necessary, but it has gotten in the way a little bit. Quotas, I think, have damaged the intent of the law." App., vol. II, at 489. Significantly, white jurors kept on the panel gave similar responses.

court may have addressed these reasons at stage two of the *Batson* inquiry and decided that they were not race-neutral, rather than finding them pretextual at stage three. I also agree that these reasons cannot be rejected at stage two merely on the basis of their disparate impact on minorities. Because this is a sensitive area, I believe a thorough analysis is appropriate.

Suffering racial discrimination and believing in affirmative action are reasons closely linked to race, and a peremptory strike on those grounds arguably could be viewed as resting on forbidden racial stereotypes or on the impermissible assumption that a black juror will identify with a black litigant simply on the basis of experiences they share due to their race. The Supreme Court has made clear that a juror may not be challenged merely on counsel's assumption–or his intuitive judgment–that a juror would be partial to a party because of their shared race. *Batson v. Kentucky*, 476 U.S. 79, 97 (1986); *Georgia v. McCollum*, 505 U.S. 42, 59 (1992). Racial discrimination in the selection of jurors affects the integrity of the judicial process, *see Powers v. Ohio*, 499 U.S. 400, 411 (1991), undermines public confidence in the courts as impartial fora for the resolution of disputes, particularly in the sensitive area of race relations, *see McCollum*, 505 U.S. at 49, and causes "profound personal humiliation heightened by its public character," *Powers*, 499 U.S. at 413-14. Because this issue is so important and so sensitive, a court must do more than merely state, as self-evident, that these two

reasons are race-neutral when in fact they are so closely tied to race. The majority's summary treatment of the matter does not respond to the district court's concern that striking every black juror who reveals that he agrees with affirmative action or has been the victim of discrimination will almost always result in an all-white jury. I am also concerned that the majority gives an incomplete picture to litigants and others reading the opinion for guidance in this difficult area of the law.

The Supreme Court dealt with this issue at length in *Hernandez v. New York*, 500 U.S. 352 (1991). Although the majority cites *Hernandez* in passing, that case is particularly relevant and a more extensive discussion of that holding and its impact on the issue here is appropriate. *Hernandez* addressed peremptory challenges to bilingual Latino jurors that were justified on the ground that those jurors might not defer to the official translation of testimony originally given in Spanish. The party opposing the strike argued that because the ability to speak Spanish bears a close relation to ethnicity, it violated *Batson* to exercise a peremptory challenge on the ground that a Latino speaks Spanish, particularly given the high correlation between speaking Spanish and ethnicity in New York. *See id.* at 360 (plurality opinion). The Court stated that it need not address that narrow argument because the challenge was not based on language ability alone. The Court pointed out that the challenge "rested neither on the intention to

exclude Latino or bilingual jurors, nor on stereotypical assumptions about Latinos or bilinguals," *id.* at 361, but on the concern that Spanish speakers might have difficulty accepting the translator's rendition of the testimony.

The Court nonetheless recognized that the basis for the challenge might well result in the disproportionate removal of prospective Latino jurors. Although it held that "disproportionate impact does not turn the prosecution's actions into a per se violation of the Equal Protection Clause," *id,* it also recognized that "disparate impact should be given appropriate weight in determining whether the prosecutor acted with a forbidden intent," *id.* at 362. The Court went on to state:

> While *the disproportionate impact* on Latinos resulting from the prosecutor's criterion for excluding these jurors does not answer the race-neutrality inquiry, it *does have relevance to the trial court's decision on this question.* "[A]n invidious discriminatory purpose may often be inferred from the totality of the relevant facts, including the fact, if it is true, that the [classification] bears more heavily on one race than another." *If a prosecutor articulates a basis for a peremptory challenge that results in the disproportionate exclusion of members of a certain race, the trial judge may consider that fact as evidence that the prosecutor's stated reason constitutes a pretext for racial discrimination.*

*Id.* at 363 (emphasis added) (quoting *Washington v. Davis*, 426 U.S. 229, 242 (1976)). Under *Hernandez* and the cases upon which it relies, therefore, while disparate impact does not result in a per se equal protection violation, it is highly relevant to the issue of pretext. *Hernandez* thus presents a balanced view of the

- 4 -

relevance of disparate impact, guidance on its place in the *Batson* inquiry, and responds to the trial court's concerns here.

The second issue I believe merits additional analysis is the trial court's dismissal of Ms. Heno's claim under 42 U.S.C. § 1981 on the ground that the claim had no independent basis other than Title VII. Although I agree with the majority's conclusion that the trial court erred in so doing, the error indicates that our case law needs clarification beyond that provided by the majority.

As an initial matter, it is important to explain what our cases mean when they hold that a claim under section 1981 or 1983 cannot go forward together with a Title VII claim unless those claims have a basis independent from the Title VII claim. The independent basis required is not an independent *factual* basis but an independent *legal* basis. If the claim made under section 1981 or 1983 is based on a legal right *created* by Title VII, such as retaliation, rather than a right created by a constitutional provision or another federal statute, the claim does not have an independent legal basis. If, on the other hand, the section 1981 or 1983 claim has an independent legal basis, such as the Equal Protection Clause, both claims may proceed even if they are based on the same facts.

In *Drake v. City of Fort Collins*, 927 F.2d 1156 (10th Cir. 1991), the plaintiff brought race discrimination claims under Title VII, and sections 1981 and 1983. The district court dismissed the latter claims on the ground that Title

VII provided the exclusive remedy. This court reversed, holding that the section 1981 and 1983 claims had a separate legal basis not created by Title VII. *See* 927 F.2d at 1162. We said in relevant part:

> But a plaintiff must have an independent basis for claims outside of Title VII, "lest Congress' prescribed remedies under Title VII be undermined."
>
> Plaintiff, in his original complaint, alleges that his due process and equal protection rights were violated, and requests remedies for those alleged violations under §§ 1981 and 1983. Therefore, he has alleged an independent basis for those claims. To the extent his factual allegations state a claim under these statutes, the district court erred in dismissing them.

*Id.* We pointed out that while disparate *treatment* claims may be brought under both Title VII and sections 1981 or 1983, disparate *impact* claims are a creature of Title VII and may not be brought under section 1981 or 1983 since those statutes require purposeful discrimination. We then held the district court's erroneous dismissal of the section 1981 and 1983 claims harmless because we had already analyzed the *facts* in our discussion of Title VII and concluded that plaintiff had failed to put forth evidence to survive a summary judgment motion on discriminatory intent. This reading of *Drake* is made clear by the cases it cites. *See Starrett v. Wadley*, 876 F.2d 808, 813-14 (10th Cir. 1989); *New Mexico ex rel. Candelaria v. City of Albuquerque*, 768 F.2d 1207, 1209 (10th Cir. 1985).

In *Notari v. Denver Water Dep't*, 971 F.2d 585 (10th Cir. 1992), we elaborated on the holding in *Drake*, stating that when a claim under section 1981

or 1983 has a basis independent of and not created by Title VII, claims under both statutes may properly be brought. *See id.* at 587. The basis for a claim under section 1981 or 1983 is independent when it rests on a constitutional right or a federal statutory right other than those created by Title VII. *Id.* We pointed out that a race claim brought under section 1983 is based on the Equal Protection Clause of the Fourteenth Amendment and is therefore independent of Title VII even if the claims arise from the same factual allegations and even if the same conduct violates both statutes. *Id.*

Section 1981 is based on Congress' power under section 2 of the Thirteenth Amendment to determine the badges and incidents of slavery and translate that determination into effective legislation. *Runyon v. McCrary*, 427 U.S. 160, 170 (1976). Accordingly, its basis is found in the Constitution and not in rights created by Title VII. Indeed, *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 459-61 (1975), specifically held that a plaintiff may sue under both sections. The Court stated that "the remedies under Title VII and under § 1981, although related, and although directed to most of the same ends, are separate, distinct, and *independent*." *Id.* at 461 (emphasis added). Although *Tafoya v. Adams*, 612 F. Supp. 1097 (D. Colo. 1985), relied on by the district court here, holds to the contrary, it has been soundly criticized and conflicts with the circuit authority discussed above. Moreover, in affirming *Tafoya* on appeal we specifically stated

that we were deciding the appeal on the narrower ground that the plaintiff had only alleged retaliatory discharge in his complaint, a right that was created by Title VII.  The court therefore did not reach the "broader pronouncement" of the district court.  *Tafoya v. Adams*, 816 F.2d 555, 556-57 (10th Cir. 1987).

Accordingly, I join in the majority's resolution of the *Batson* claim and the dismissal of the section 1981 claim, as well as the remainder of the opinion.