**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**September 19, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

NORTHERN NATURAL GAS
COMPANY,

        Plaintiff - Appellant,

   v.

TRANS PACIFIC OIL
CORPORATION; BE USA LP 1987-1;
VESECO; AIR PIPELINE
CORPORATION,

        Defendants-Third-Party-
        Plaintiffs-Appellees.

and

SONDRA BOYD; DALMER CRICK;
GERTRUDE CRICK; KATHY
EPPERLY; HERBERT PARK;
MARVIN PARK; CONNIE SUE
PARMELY,

        Third-Party-Defendants-
        Appellees.

No. 05-3411

D. Kansas

(D.C. No. 02-CV-1418-JTM)

---

**ORDER AND JUDGMENT**[*]

---

[*]This order and judgment is not binding precedent except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

Before **HARTZ**, **SEYMOUR**, and **O'BRIEN**, Circuit Judges.

Northern Natural Gas Company (Northern) appeals from the district court's denial of its renewed motion for judgment as a matter of law or in the alternative motion for new trial.  Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we affirm.

## I. Background

In the late 1970's, Northern began storing previously extracted natural gas in the Cunningham Field's Viola formation located in Kingman and Pratt Counties, Kansas.[1]  By 1980, Northern had injected enough gas to begin extracting it when necessary.  Trans Pacific Oil Corporation (Trans Pacific) subsequently acquired oil and gas leases on land just north of the Cunningham Field.  In 1987, it drilled two wells called "Park # 1" and "Park 'A' # 1." (Appellees' Supp. App. at 76, 94.)  After finding oil and gas, Trans Pacific received a "New Pool Determination" for each well from the Kansas Corporation Commission.

Sometime in the 1990's, Northern began to suspect its storage gas was migrating and Trans Pacific was extracting the storage gas from its Park wells.

---

[1]  The Cunningham Field consists of several formations underneath the earth.  The Viola formation is a specific stratum found within the Cunningham Field.

Northern conducted tests on these wells in 1998 to determine whether Trans Pacific was producing Northern's injected storage gas. Northern confirmed its belief based on the tests and historical data. Relying mainly on Kan. Stat. Ann. § 55-1210,[2] Northern initiated the current lawsuit against Trans Pacific in 2002.[3] Northern alleged Trans Pacific was producing its storage gas, which had migrated underground from Northern's Cunningham Field.[4] Thereafter, Northern filed a motion for a preliminary injunction to prohibit Trans Pacific from producing Northern's storage gas through the Park wells. The district court entered a stipulated order regarding the motion shutting in Trans Pacific's wells. The final sentence of the order stated:

> Notwithstanding the foregoing, if the final judgment in these proceedings is that Trans Pacific is entitled to once again to [sic] produce the above-described wells, it is understood that Trans Pacific will contend that it is entitled to damages due to the fact that the wells

---

[2] Kan. Stat. Ann. § 55-1210 was passed in 1993 and provides that a gas injector does not lose its rights to the gas it has injected should the gas migrate outside of the injector's storage area. § 55-1210(c).

[3] Northern also named BE USA L.P., 1987-1; Vesoco, LLC; and A I R Pipeline Corporation, all who had working interests in the Park leases, as defendants. We will refer to these defendants collectively as "Trans Pacific."

[4] Trans Pacific joined Sondra Boyd, Dalmer Crick, Gertrude Crick, Kathy Epperly, Herbert Park, Marvin Park and Connie Sue Parmely as third-party defendants asserting they, as royalty or overriding royalty interest holders, would also be liable for and should contribute to any damages due Northern. At this point the interests of the third-party defendants seem to be the same as those of the original defendants; they have joined with Trans Pacific in this appeal. Accordingly, our reference to Trans Pacific will also include the third-party defendants.

were shut in pursuant to this injunction, and nothing in this Order shall be interpreted to prohibit or bar such a claim by Trans Pacific, the other Defendants, or any other interest owners in the wells.

(Appellees' Supp. App. at 49.)

On May 11, 2004, the final Pretrial Order was entered without objection by either party. The "Defendants' Damages" section stated:

[Trans Pacific] contend[s] that [it is] entitled to retain $173,497.69 for the period when the Park wells were shut-in while Northern conducted testing. In addition, [Trans Pacific is] entitled to damages for lost production due to shutting in the wells, in an amount based on historical production amounts, applied to the months in question, and to any future periods on similar grounds, based on the value of native oil and gas which could be recovered by [Trans Pacific].

(Appellant's App. Vol. I at 55.)

Trial was held in May 2005. After the close of Northern's evidence, Trans Pacific orally asked for judgment as a matter of law under Rule 50(a) of the Federal Rules of Civil Procedure. Specific to this appeal, Trans Pacific asserted Kan. Stat. Ann. § 55-1210 was not retroactive and Northern could not receive money for storage gas which had migrated or was removed prior to its enactment in 1993. Trans Pacific sought judgment because Northern provided no evidence as to when the storage gas migrated. The district court took the motion under advisement. At the close of all the evidence, Northern orally asked for judgment as a matter of law under Rule 50(a) on Trans Pacific's counterclaims of trespass, nuisance, inverse condemnation and fair rental value of storage but did not address Trans Pacific's shut-in damages claim. The court took Northern's motion

under advisement. Later the same day, the court sent unedited copies of the tentative jury instructions and proposed Special Verdict Form to all of the parties for review over the weekend.

Subsequently, the court held an in-chambers conference to discuss the final jury instructions and Special Verdict Form. Northern did not object to Jury Instruction No. 13 which included a sentence stating: "In relation to the continuing closure of [its] wells, defendant Trans Pacific seeks compensation for the shutting in of [its] wells from November 19, 2002, to the present." (Appellant's App. Vol. I at 93.) Next, the court went through Trans Pacific's proposed Special Verdict Form which was submitted at the conference. Northern did not object to Question 1 which required the jury to determine whether Northern's storage gas had migrated to Trans Pacific's wells "after June 30, 1993." (*Id.* at 85.) Furthermore, Northern did not object to Questions 6a and 6b which asked the jury to (a) determine whether Trans Pacific was entitled to shut-in damages and, if so, (b) how much "should Northern pay." (Appellant's App. Vol. I at 87.) Immediately below Question 6b was an explanatory note: "(Note: These damages will be paid to Trans Pacific, who will in turn be responsible to distribute the funds to the working, overriding royalty, and royalty interest owners pursuant to their percentage interest in the leases)." (*Id.*) While the explanatory note did not change, Question 6b on the final Special Verdict Form called for the jury to determine how much in damages, if any, "should each

defendant receive?" (Appellant's App. Vol. I at 106.) Northern did not object to the final Special Verdict Form when read or after it was submitted to the jury.

During jury deliberations, the jury submitted a question to the court: "Estimate cost on re-opening well (Park , Park A). -or- may we get a way to calculate fair start up costs." (Appellant's App. Vol. I at 101.) A few minutes later, the jury submitted another question: "We would like a market value for gas and oil for the shut out time in order to consider fair losses." (*Id.* at 102.) The court asked the parties if they wished to clarify their positions on damages but both parties declined, preferring the jury rely on the evidence presented at trial. The court explained this to the jury and responded on the jury question forms: "This was answered on the record in the courtroom." (*Id.* at 101-02.) The jury returned the Special Verdict Form determining no gas had migrated from Northern's storage area to Trans Pacific's wells "on or after July 1, 1993," and awarded $1,140,000 in shut-in damages to each defendant. (Appellant's App. Vol. I at 104.) The court entered judgment for Trans Pacific and awarded $1,140,000 in damages to each defendant.

Thereafter, Northern filed a renewed motion for judgment as a matter of law or in the alternative a motion for new trial under Rules 50(b) and 59 of the Federal Rules of Civil Procedure, respectively. It asserted: (1) Trans Pacific's shut-in damages claim was not properly pled in the Pretrial Order, (2) Northern did not consent to trying the shut-in damages claim nor was there sufficient

evidence presented at trial to put it on notice of such a claim, (3) the jury was not specifically instructed on the shut-in damages claim and there was no factual basis supporting such instruction, (4) Questions 6a and 6b on the Special Verdict Form were flawed, and (5) the Special Verdict Form contained a material misstatement of the law because it required the jury to determine whether any of Northern's storage gas had migrated after July 1, 1993. The court denied Northern's motion on the merits.

## II. Discussion

Northern's issues on appeal are similar to those in its Rule 50(b) or in the alternative Rule 59 motion and further argues the cumulative effect of these errors requires a new trial.

(1) *Whether Trans Pacific's Claim for Shut-in Damages Was Properly Pled in the Pretrial Order*

Northern raised the issue of whether Trans Pacific properly pled its claim for shut-in damages in the Pretrial Order for the first time in its post-trial Rule 59 motion. Upon review of the Pretrial Order, the district court determined Trans Pacific properly pled shut-in damages. "Because the district court is in the best position to interpret its pretrial order, our standard of review on appeal is abuse of discretion." *Tyler v. City of Manhattan*, 118 F.3d 1400, 1403 (10th Cir. 1997).

The Pretrial Order stated: "[Trans Pacific is] entitled to damages for lost production due to shutting in the wells, in an amount based on historical

production amounts, applied to the months in question, and to any future periods on similar grounds, based on the value of native oil and gas which could be recovered by [Trans Pacific]." (Appellant's App. Vol. I at 55.) Northern did not object to the Pretrial Order's inclusion of a shut-in damages claim. Moreover, when faced with Jury Instruction No. 13 which specifically said "Trans Pacific seeks compensation for the shutting in of [its] wells from November 19, 2002, to the present," Northern did not object. (*Id.* at 93.) Finally, as the district court noted, Northern did not object to Questions 6a and 6b on the Special Verdict Form, which directly asked about shut-in damages, at either the jury instruction conference or after it was read to the jury. It is apparent the court did not abuse its discretion in concluding Trans Pacific's claim for shut-in damages was properly pled in the Pretrial Order and Northern never properly objected in the district court.

(2) *Whether the Evidence was Sufficient to Prove Shut-in Damages*

"To preserve a sufficiency of the evidence claim for appellate review, a party must move for judgment as a matter of law (directed verdict) under [Rule] 50(a) at the close of the evidence." *United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd.*, 210 F.3d 1207, 1228 (10th Cir. 2000). However, "[m]erely moving for directed verdict is not sufficient to preserve any and all issues that could have been, but were not raised in the directed verdict motion." *Id.* at 1229. "A party may not circumvent Rule 50(a) by raising for the first time in a post-trial

motion issues not raised in an earlier motion for directed verdict." *Id.* at 1228.

Northern made a Rule 50(a) motion, but never mentioned Trans Pacific's claim for shut-in damages. Had Northern believed there was insufficient evidence of shut-in damages, it should have raised the issue prior to allowing the case to be submitted to the jury. Furthermore, during deliberations the jury submitted questions regarding how to calculate the shut-in damages. The district court offered both parties the opportunity to clarify their position, but both decided to let the jury rely on the evidence submitted at trial. Because Northern failed to raise this issue until after the jury returned its verdict, it was not properly preserved for our review.

(3) *Whether the Special Verdict Form was Inconsistent*

Northern claims the Special Verdict Form was irreconcilably inconsistent. Northern finds error with Question 6b because it asked the jury to determine how much each defendant should receive in shut-in damages, but the parenthetical below the question asserted the damages award would be divided up according to each defendants' percentage interest in the leases. Northern argues this is irreconcilably inconsistent because the question appeared to give each defendant the same amount of money but the parenthetical indicated the defendants will only receive a percentage of the amount. "A verdict is irreconcilably inconsistent only when the essential controlling findings are in conflict, the jury has failed utterly to perform its function of determining the facts, and its verdict is a

nullity." *Johnson v. Ablt Trucking Co.*, 412 F.3d 1138, 1144 (10th Cir. 2005) (quotation omitted).

Northern claims it did not waive this issue because the jury returned a Special Verdict Form. "Although a party waives a claim of inconsistent verdicts based on a general jury verdict under Fed. R. Civ. P. 49(b), if not timely raised, this rule does not apply to special verdicts under Fed. R. Civ. P. 49(a)." *Heno v. Sprint/United Mgmt. Co.*, 208 F.3d 847, 851 (10th Cir. 2000). "When the verdicts are special verdicts a party is not required to object to the inconsistency before the jury is discharged in order to preserve that issue for a subsequent motion before the district court." *Id.* at 851-52 (quotation omitted).

In *Heno,* the jury rejected an agent's liability in one special verdict question, but then found the principal liable based on the agent's actions in another question. *Id.* at 851. The *Heno* verdict was irreconcilably inconsistent because the principal in that case could not be held liable for an innocent agent. *Id.* at 852-53. In this instance, however, the Special Verdict Form is not irreconcilably inconsistent. Northern does not argue the jury's answer to one special verdict question is irreconcilable with another one of its answers, but rather claims one question on the verdict form is internally inconsistent. In essence, Northern is arguing the jury's award of damages is ambiguous by

operation of the language in Special Verdict Form Question 6b.[5]

"A party who fails to bring to the trial court's attention ambiguities created by jury instructions or special verdict forms may not seek to take advantage of such ambiguities on appeal." *Kenworthy v. Conoco, Inc.*, 979 F.2d 1462, 1468 (10th Cir. 1992) (finding waiver where party did not object to either the jury instruction or the special verdict form and did not seek clarification of the verdict before the jury was dismissed); *see also Kloepfer v. Honda Motor Co.*, 898 F.2d 1452, 1456 (10th Cir. 1990) (holding the plaintiffs waived their right to challenge a special verdict form where they did not submit their own form and participated in editing the form sent to the jury). Northern did not object to Questions 6a or 6b on the Special Verdict Form at the jury instruction conference; it raised the issue for the first time in its post-trial Rule 50(b) motion. Furthermore, Northern did not object to the Special Verdict Form after it was read and submitted to the jury or seek clarification of the verdict before the jury was dismissed. It cannot now assert the form was flawed.

(4)    *Whether Special Verdict Form Question 1 contained a material misstatement of the law.*

---

[5] Northern disclaims any argument the jury verdict is ambiguous stating "the jury's verdict is crystal clear; it awarded $1.14 million in damages to 'each' defendant." (Appellant's Reply Br. at 15.) However, it takes issue with how the jury's award operates in connection with the parenthetical of the verdict form question. No matter what dollar amount the jury awarded, Northern is appealing the language of the verdict question which it claims makes the award of damages irreconcilably inconsistent. Northern's argument is akin to arguing the verdict form itself creates an ambiguity.

In its post-trial motion, Northern asserted it was entitled to a new trial because Special Verdict Form Question 1 contained a misstatement of law in that it improperly required Northern to prove its storage gas migrated on or after July 1, 1993, the effective date of Kan. Stat. Ann. § 55-1210, in order to recover. The district court concluded Question 1 was not improper because § 55-1210 only applied to storage gas which had migrated after its effective date. Even assuming Question 1 was flawed, the court noted Northern had not objected to it. On appeal, Northern argues the court's interpretation of § 55-1210 was erroneous. Normally, we review a court interpretation of a state statute de novo. *Cooper v. Cent. & Sw. Servs.*, 271 F.3d 1247, 1251 (10th Cir. 2001). However, Northern did not object to Special Verdict Form Question 1, which contained the court's "interpretation" of § 55-1210 and specifically asked the jury to determine whether Northern's stored gas had migrated to Trans Pacific's wells on or after July 1, 1993, at either the instruction conference or upon it being submitted to the jury. Therefore, Northern has waived the right to appellate review. *Kenworthy*, 979 F.2d at 1468-69; *Kloepfer*, 898 F.2d at 1456.

### III. Conclusion

Northern failed to preserve any of its claims making a cumulative error analysis moot. **AFFIRMED**.

FOR THE COURT:

Terrence L. O'Brien
United States Circuit Judge