**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 20 2000**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

MARION I. KELLEY, JR.,

      Plaintiff - Appellant,

v.

GOODYEAR TIRE AND RUBBER
COMPANY,

      Defendant - Appellee.

No. 99-3157

Appeal from the United States District Court
for the District of Kansas
(D.C. No. CV-97-4026-RDR)

Submitted on the briefs:

Alan V. Johnson, Sloan, Listrom, Eisenbarth, Sloan & Glassman, L.L.C., Topeka,
Kansas, for Plaintiff-Appellant.

Tammy L. Horn and Helaina Bardunias, Stinson, Mag & Fizzell, P.C., Kansas
City, Missouri, for Defendant-Appellee.

Before **BALDOCK,** **MAGILL,**[*] and **LUCERO,** Circuit Judges.

**MAGILL,** Circuit Judge.

---

[*]Honorable Frank Magill, Senior Circuit Judge, United States Court of Appeals for
the Eighth Circuit, sitting by designation.

Marion I. Kelley, Jr. sued Goodyear Tire & Rubber Co. (Goodyear) alleging he was not hired because of his race, or, in the alternative, in retaliation for filing a discrimination complaint against a previous employer. The district court[1] granted Goodyear's motion for summary judgment as to both claims, and Kelley appealed. We AFFIRM.[2]

## I.

On October 29, 1993, Kelley, an African-American, submitted an application and had a screening interview for an entry level position with Goodyear. Individuals hired for this level of position are required to complete three interviews. S. D. Stotts conducted the initial screening interview in order to examine the communications skills of Kelley and to observe his ability to follow instructions. During the interview, Stotts made the following notes:

> Wanted to talk about football rather  –
> – Poor Interview
> Poor & nervous
> Knows – Jeff Thompson.

---

[1]The Honorable Richard Rogers, United States District Judge for the District of Kansas.

[2]After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). This cause is therefore ordered submitted without oral argument.

Stotts states he thought Kelley devoted too much time to discussing football, was overly nervous, dwelled on who he knew rather than discussing his previous work experience, and that Kelley was giving more of a sales pitch instead of answering questions about his prior experience. Stotts rated the interview as poor. The application form instructs the applicant to "circle the highest school year completed" and list the name of the school. Kelley circled "3" under college and listed the colleges he attended. Goodyear, as a practice, verbally asks the applicant to also list his high school. Kelley claims he was not asked to list his high school, and admits he did not include such information on his application. The application also required the applicant to "account for all your time – regardless of how spent (including military)." Kelley's application listed nothing from the Summer of 1977 through April 1980, March 1983 through May 1985, and November 1992 through October 1993. Stotts noted in regard to the application:

> Incomplete Application
> Information – lacking
> High School??
> 78 thru '80??
> Hasn't worked for a year!?

Kelley was never offered a position with Goodyear.

## II.

A grant of summary judgment is reviewed de novo. See Aramburu v. Boeing, Co., 112 F.3d 1398, 1402 (10th Cir. 1997). The evidence is viewed in a light most favorable to the nonmoving party. See Beaird v. Seagate Tech., Inc., 145 F.3d 1159, 1165 (10th Cir. 1998). However, the nonmoving party cannot rely solely on the allegations in the pleadings and must supply evidence of a question of fact for the case to go to the jury. See Aramburu 112 F.3d at 1402.

## III.

Kelley alleges Goodyear did not hire him because he is African-American. To survive summary judgment, a plaintiff must first demonstrate that he has a prima facie case. See Randle v. City of Aurora, 69 F.3d 441, 451 (10th Cir. 1995). Goodyear admits Kelley can establish a prima facie case. Under the McDonnell Douglas burden-shifting analysis, the employer is then required to show a facially non-discriminatory reason for the adverse employment action. See id. (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)). Kelley admits Goodyear has met this burden by offering two nondiscriminatory reasons for not hiring him: his poor interview and his incomplete application.[3]

_____

[3]For purposes of this appeal, this Court assumes Kelley was not told to fill in his high school. Regardless of this assumption, Kelley's application was still incomplete

(continued...)

Once again the burden shifts, now back to the plaintiff to demonstrate the proffered reasons for the employment action are mere pretext. See Randle, 69 F.3d at 451.

Kelley puts forth three reasons to disbelieve Goodyear's explanation that Kelley was not hired due to his poor interview. First, Kelley asserts he performed well in the interview. Second, Kelley claims Stott's memory of the interview is muddled. Third, Kelley asserts Stott's assessment of the interview is based on subjective factors. None of these reasons demonstrate that Goodyear's explanation is pretextual.

Kelley's assertion that he performed well in the interview is without support. A plaintiff cannot create a triable issue of fact by making an assertion without supporting facts. See Thomas v. IBM, Corp., 48 F.3d 478, 485 (10th Cir. 1995). Kelley claims he was not nervous during the interview, nor did he talk too much about football as Stotts claims. Kelley's opinion of the interview is simply irrelevant, "[i]t is the manager's perception of the employee's performance that is relevant, not plaintiff's subjective evaluation of his own relative performance." Furr v. Seagate Tech., Inc., 82 F.3d 980, 988 (10th Cir. 1996). In Furr, the plaintiff's assertion that his performance was adequate held no probative value

_____

[3](...continued)
because he did not account for six years of his work experience despite the direct written instruction to account for all of his time.

-5-

because only his supervisor's impression that his performance was inadequate and whether that impression was pretextual was at issue. See id. Similarly, absent any supporting evidence for his position, Kelley's claim that he performed well in the interview cannot overcome Stotts's opinion that Kelley did a particularly poor job in the interview, resulting in Kelley not being hired.

Kelley's assertion that Stotts does not remember the details of the interview and misdated certain notes is equally irrelevant. Again, Kelley is making mere assertions with no supporting evidence other than his own recollection of the interview. A supervisor should not be held to the unreasonable standard of remembering every detail of every interview he conducts. See Miller v. Citizens Sec. Group, Inc., 116 F.3d 343, 347 (8th Cir. 1997). A manager who interviews hundreds of individuals a year and yet claims to remember every detail of a hiring decision that took place over six years ago should raise more suspicion than an individual who must refer to notes taken contemporaneously with the interview. There can be no doubt that Stotts's notes of "poor interview" and "poor and nervous" could adequately support his recollection of the interview. Kelley can offer nothing more than mere allegations to support his position.

Kelley's assertion that the factors used to evaluate the interview were subjective is without merit. Kelley claims that because the evaluation factors were subjective, Goodyear's reliance on the poor quality of his interview must be

-6-

pretextual. Goodyear's interview process, like almost all interviewing, is subjective. Questions of personality, interpersonal skills, and ability to take oral instruction do not lend themselves to objective qualification. However, Kelley has missed an important step in the analysis. This Court has held "the use of subjective criteria does not suffice to prove intentional . . . discrimination." Furr, 82 F.3d at 987. The use of subjective factors can give rise to an inference of discrimination when there is a significant underrepresentation of a particular racial group in the company's workforce, but when there is no such underrepresentation no inference of discrimination may be drawn. See Lujan v. Walters, 813 F.2d 1051, 1057 (10th Cir. 1987). Although Kelley does not make the underrepresentation argument, a closer examination of Goodyear's hiring data reveals this argument fails. From October 11, 1993, to December 20, 1993, Goodyear interviewed 185 individuals for entry level positions of which 129 were white and 36 were African-American. Twenty-two African-Americans were hired and sixty-eight whites. Thus, Goodyear hired 61% of the African-American interviewees and 53% of the white interviewees. Statistically, African-Americans were not underrepresented in the group hired by Goodyear in comparison to the pool of interviewees. The claim by Kelley that somehow the use of subjective factors renders the interview per se discriminatory is meritless.

Finally, Kelley argues his incomplete application is also a pretext for impermissible discriminatory behavior. Kelley attempts to compare himself to five white applicants who he claims are similarly situated. However, none of the white applicants who were hired, nor any other applicant who was hired, is similarly situated. The burden is on the plaintiff to demonstrate he is similarly situated to the employees to whom he is comparing himself. See Cone v. Longmont United Hosp. Ass'n, 14 F.3d 526, 532 (10th Cir. 1994). One of the white applicants was an internal applicant, who, by Goodyear's policy, was not required to go through the full interview process. The other four applicants all submitted incomplete applications, however they also performed extremely well in the interviews. Kelley does not present a single applicant who was accepted, and who, like himself, performed poorly in the interview and submitted an incomplete application. The record simply reveals no similarly situated individuals. Further reinforcing the position that no racial discrimination occurred, at least twelve African-American applicants submitted incomplete applications, but interviewed well. All of these applicants were hired by Goodyear, in spite of the incomplete applications, between October 11, 1993, and December 20, 1993. Kelley presents no evidence that Goodyear's reliance on his incomplete application was pretextual.

Kelley is unable to demonstrate that Goodyear's proffered reasons for not hiring him, his poor interview and his incomplete job application, were in any manner pretexts for racial discrimination. Because Kelley cannot provide any evidence that Goodyear's justifications were pretextual, summary judgment in favor of Goodyear on the Title VII claim was appropriate.

## IV.

Kelley further alleges Goodyear did not hire him in retaliation for his filing a discrimination complaint with the Kansas Human Rights Commission (KHRC) against his previous employer. Kelley claims, and for purposes of this appeal this Court assumes, he told Stotts during his interview that he had filed a complaint alleging racial discrimination against Midwest Grain, his former employer. The same McDonnell Douglas burden-shifting analysis used for the allegation of racial discrimination is applied to retaliation claims, and, thus, to establish a prima facie case a plaintiff must show: 1) he was engaged in protected opposition to Title VII discrimination, 2) he was subject to adverse employment action, and 3) a causal connection between the protected opposition and the adverse employment action. See Bullington v. United Air Lines, Inc., 186 F.3d 1301, 1320 (10th Cir. 1999). While Kelley does meet parts one and two of the McDonnell Douglas analysis for a prima facie case, Kelley cannot establish the

third prong because the necessary causal connection between his filing of a complaint with the KHRC and his not being hired does not exist.

The only evidence Kelley relies on to establish the necessary causal connection between his complaint of racial discrimination and not being hired is that the adverse employment action occurred shortly after he announced his previous filings of racial discrimination claims. Normally, a close temporal proximity between the protected conduct and the adverse employment action "may justify an inference of retaliatory motive." Marx v. Schnuck Markets, Inc., 76 F.3d 324, 329 (10th Cir. 1996) (emphasis added). The logic of making such an inference may be diminished when the alleged retaliation is committed by a potential employer who has not yet hired the plaintiff. The decision not to hire an individual almost always occurs shortly after a job application has been received or an interview has been conducted. A close temporal proximity will almost always occur in failure-to-hire cases because employers naturally make hiring decisions soon after receiving applications and conducting interviews. Thus, temporal proximity alone will usually be insufficient to establish a causal connection between the protected opposition to discrimination and not being hired. Kelley could have still established a causal connection through other evidence linking the filing of the complaint with the KHRC and the decision not to hire him. The record reveals no other evidence of a causal connection that was

presented, and thus Kelley cannot make out a prima facie case for retaliation. Summary judgment was therefore appropriate.

## V.

For the foregoing reasons, we AFFIRM the decision of the district court.