**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**February 6, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

GEORGE R. MARTINEZ,

      Plaintiff-Appellant,

v.

UNITED STATES DEPARTMENT
OF ENERGY, Samuel W. Bodman,
Secretary,

      Defendant-Appellee.

No. 04-2321
(D. N.M.)
(D.Ct. No. CIV-03-662 WPJ/ACT)

**ORDER AND JUDGMENT**[*]

Before **LUCERO**, Circuit Judge, **BRORBY**, Senior Circuit Judge, and
**McCONNELL**, Circuit Judge.

Appellant George R. Martinez appeals the district court's grant of summary

judgment in favor of Appellee, the Secretary of the United States Department of

Energy,[1] on claims arising under Title VII of the Civil Rights Act of 1964, as

---

[*] This order and judgment is not binding precedent except under the
doctrines of law of the case, *res judicata* and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[1] Mr. Martinez brought this suit against then Energy Secretary Spencer
Abraham in his official capacity. On February 1, 2005, following the district
court's November 12, 2004 decision in the case, Samuel W. Bodman officially

(continued...)

amended, 42 U.S.C. §§ 2000e to 2000e-17, and the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621-631, 633-34. The crux of Mr. Martinez's suit is his claim of disparate treatment on the basis of age and race or national origin, alleging the Department of Energy passed him over for positions in favor of younger, non-Hispanic employees.[2] We exercise jurisdiction under 28 U.S.C. § 1291 and affirm.

## I. Factual Background

The relevant facts are mainly undisputed, with the exception of certain facts which the district court found immaterial to its summary judgment determination and which we address hereafter. To begin, Mr. Martinez is a Hispanic male, who at the time in question was over forty years old, and for twenty-four years worked for the Department of Energy in the Albuquerque, New Mexico, Operations Office of the National Nuclear Security Administration, rising to the position of senior courier. In February 2000, he applied for a position as lead courier when

---

[1](...continued)
replaced Mr. Abraham as Secretary of the Department of Energy, and therefore, the caption in this case has been amended to reflect the substitution of Mr. Bodman.

[2] In his complaint, Mr. Martinez also alleged his employer retaliated against him because of his participation in filing Equal Employment Opportunity complaints. He later conceded to dismissal of the retaliation claims on the basis of nonexhaustion; therefore, those claims are not before us on appeal.

two openings were advertised. A total of seven individuals applied for the two positions, with four of those applicants being over the age of forty and three of Hispanic ethnicity. Three panel members in the position of unit commander in the Albuquerque courier section evaluated the applicants. Another individual, Philip Griego, a human resources specialist, sat in on the interviews to ensure panel members conducted them in accordance with all applicable personnel regulations and asked each applicant the same questions. The panel based its evaluation and ranking of the applicants on their (1) application packages, including their answers to the application questions and responses to the knowledge, skills and abilities (KSA) criteria;[3] (2) on-the-job performance; (3) leadership ability; and (4) interviews, which involved the same questions posed to each applicant.

An examination of Mr. Martinez's application establishes he misdated his application over one year prior to the vacancy announcement. Under the heading "Work Experience," he merely stated, "I have been employed by DOE as a courier

---

[3] The four KSA criteria contained in the vacancy announcement for the lead courier position included: (1) knowledge of shipment security to include demonstrated ability in tactical theories and practical application; (2) ability to deal effectively with team members and a variety of people, interacting to accomplish defined tasks; (3) ability to perform as a work leader; and (4) ability to interpret and apply policies and regulations relative to shipment security.

for my entire career! 24 years," and provided no other description. Under the heading "Education," he wrote, "info is in my personnel file," without furnishing any other information, other than listing his 1972-1974 diploma in electronics technology. In regard to other training or courses taken, he stated only, "I have on the job experience and training for the past 24 yrs!" and did not list any specific course or training. While he responded to the KSA criteria, he listed his responses out of order.[4] A comparison of his responses with those of the successful applicants clearly shows his responses were not as thorough as the others, who listed in detail their prior work experience and specific education, training, and courses.

With respect to the interview, the panel members and Mr. Griego agreed Mr. Martinez did not present himself as well as the other applicants, who were asked the same questions. According to them, Mr. Martinez appeared nervous, slumped in his chair, and, at one point in the interview, put his arms behind his head and his feet on the table. They discussed his performance and agreed he did not present himself in a professional manner, gave very brief responses, and did

---

[4] Mr. Martinez's response to KSA criterion 4 is identified as number 2 on his application; similarly, his response to KSA criterion 2 is identified as number 3 on his application; and his response to KSA criterion 3 is identified as number 4 on his application.

not exhibit the leadership skills other applicants demonstrated. Although the panel thought Mr. Martinez would score higher because of his experience, he did not score as high as expected or in comparison with the other applicants. According to Mr. Griego, who observed the panel members' interviews and ratings of those interviews, no discussion occurred as to the age, race, or national origin of any applicant.

The panel submitted their evaluations and rankings to Ben Best, a facility manager, who selected Anthony Mecca, an Anglo-American male under the age of forty; and Anthony Chavez, a Hispanic male over the age of forty, for the two lead courier positions. Approximately two weeks later, when another lead courier position became open, Mr. Best selected one of the other applicants, David Smith, an Anglo-American male under the age of forty. The three selected individuals scored the highest in the applicable evaluations and rankings, while Mr. Martinez scored the second lowest of the seven applicants. In August 2000, Mr. Martinez filed an Equal Employment Opportunity complaint, alleging discrimination on the basis of his age and race or national origin.

In 2001, three vacancies opened for traffic management specialists. A total of fourteen individuals, including Mr. Martinez, were certified as eligible and

applied. Instead of conducting interviews, Everett Goodman, Chief of the Transportation Management Division, reviewed each applicant's supervisory appraisals and applications, and assigned a score to each application based on the completeness and accuracy of each response to the six KSA criteria.[5] In scoring the applications, Mr. Goodman used a system giving one point for any KSA response which did not comprehensively address the applicable KSA criterion, two points for a response which somewhat comprehensively addressed the KSA criterion, and three points for a response which comprehensively addressed the KSA criterion, including four or more examples of experience. Under the scoring system, Mr. Martinez received the third lowest score out of the fourteen applicants and responded to only five of the six KSA criteria. Mr. Goodman selected two males of Anglo-American descent and a Hispanic male — all under the age of forty. With respect to the successful Hispanic applicant, Mr. Goodman selected him over an Anglo-American applicant, even though they scored the

---

[5] The KSA criteria for the traffic management specialist positions included: (1) knowledge of DOE, DOD, and DOT safety and security regulations pertaining to the handling, storage, compatibility and transportation of nuclear explosives, radioactive material, high explosives and dangerous goods; (2) knowledge of the TSS classified computer based systems; (3) knowledge of OTS operations and the ability to analyze OTS programmatic/operational problems and develop solutions; (4) ability to interact effectively with all levels of AL management and with mid-level managers for DOE Headquarters, DOD, and all other federal agencies; (5) ability to perform oral presentations and communicate technical matters; and (6) ability to prepare written technical documents and presentation materials.

same, because he was Hispanic. A comparison of the applicants' responses to the KSA criteria shows Mr. Martinez's responses were not as thorough as the other successful applicants.[6] In July 2001, Mr. Martinez filed another Equal Employment Opportunity complaint alleging discrimination on the basis of his age and race.

Unsuccessful in resolving his Equal Employment Opportunity complaints within the Department of Energy[7], Mr. Martinez filed suit in federal court under both Title VII of the Civil Rights Act and the Age Discrimination in Employment

[6] Mr. Goodman explained one individual received the highest score because his application was "particularly thorough and well done"; he "demonstrated specific knowledge of relevant aspects of the position"; he had experience as a training instructor in areas related to the position; he had experience in oral presentation directly related to one KSA criterion; and he thoroughly addressed each of the six KSA criteria, "giving specific examples of his previous experience and his knowledge of regulations as they relate to the ... position." Another individual scored second highest because his application was thorough; he cited to specific regulations and orders directly related to KSA criterion 1, and his responses to KSA criteria 2-6 "demonstrated extensive knowledge of the required KSAs."

With respect to Mr. Martinez's application, Mr. Goodman pointed out his response to KSA criterion 1 was strong, based on his previous experience examples, but that his other responses were substandard because (1) his response to KSA criterion 2 did not relate to the criterion; (2) his responses to KSA criteria 3-5 were not comprehensive and listed no specific examples; and (3) he did not respond to KSA criterion 6.

[7] Because Mr. Martinez did not receive an agency decision within 180 days of filing his Equal Employment Opportunity complaints, he filed a complaint in federal district court.

Act on grounds he received disparate treatment on the basis of age and race or national origin when the Department of Energy selected younger, non-Hispanic employees for the open positions. Following briefing on the government's motion for summary judgment, the district court granted summary judgment in favor of the government and against Mr. Martinez for the reasons articulated hereafter. This appeal followed, in which Mr. Martinez raises the same contentions comprehensively addressed by the district court in its summary judgment decision. Namely, as contended in his affidavit opposing summary judgment, he claims a material dispute of fact exists with respect to the panel and Mr. Griego's characterization of his interview and his own perception of his interview performance. With respect to the position of traffic management specialist, he claims the government impermissibly used unapproved, subjective scoring in ranking the applications and that the district court improperly excluded, as unauthenticated, scoring sheets attached to his affidavit.

## II. Discussion

In articulating the standard of review and applicable discrimination law, we rely largely on our decision in *Jaramillo v. Colo. Jud. Dep't*, 427 F.3d 1303 (10th Cir. 2005) (per curiam). We review *de novo* the district court's summary judgment decision and "consider the evidence in the light most favorable to the

-8-

non-moving party, drawing all reasonable inferences from the available underlying facts." *Id.* at 1307 (citation omitted). Summary judgment is appropriate if the record shows "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

To prevail on a disparate treatment claim under Title VII of the Civil Rights Act, the employee must show the employer intentionally discriminated against him for a reason prohibited by the statute. *Jaramillo,* 427 F.3d at 1306. If, as here, the employee relies on circumstantial evidence, "we apply the burden-shifting framework outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Id.* (citation omitted). Similarly, we analyze age discrimination cases brought pursuant to the Age Discrimination in Employment Act under the identical analytical framework established in *McDonnell Douglas*. *See Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1216 (10th Cir. 2002). Under *McDonnell Douglas*, the employee must first establish a prima facie case of discrimination by showing "(1) he is a member of a protected class; (2) he applied for and was qualified for the particular position; (3) he was not promoted despite his qualifications; and (4) the position was filled or remained open after he was

rejected."[8] *Jaramillo,* 427 F.3d at 1306-07 (quotation marks and citations omitted). If, as the government concedes in this case, the employee establishes a prima facie case, then "a presumption of discrimination arises," resulting in the burden shifting to the employer "to articulate a legitimate, non-discriminatory reason for the adverse employment action." *Id.* at 1307. If the employer "carries its burden of production, the presumption of discrimination drops out of the case," and "[t]he burden then shifts back to the [employee], who must prove by a preponderance of the evidence that the employer's reasons are a pretext for unlawful discrimination." *Id.*

An employee like Mr. Martinez can demonstrate pretext "by producing evidence of such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons."

---

[8] Because the government concedes, for the purpose of summary judgment, that Mr. Martinez met his prima facie case on both his age and race or national origin claims, we need not address any inconsistencies in this Circuit's treatment of the fourth prong, as referenced in *Jaramillo*, 427 F.3d at 1307 n.1, other than to note that the Supreme Court has explicitly held age-discrimination plaintiffs need not show disparate treatment as compared to co-workers outside the protected class (i.e., those under forty years of age) in establishing the fourth prong. *See O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 312-13 (1996).

*Id.* at 1308 (quotation marks and citation omitted). We have said "[e]vidence of pretext may include prior treatment of [the employee]; the employer's policy and practice regarding minority employment (including statistical data); disturbing procedural irregularities (e.g., falsifying or manipulating ... criteria); and the use of subjective criteria." *Id.* (quotation marks and citation omitted). In so doing, we have proceeded with caution in considering the relative merits of individual employees, given this court "may not act as a super personnel department that second guesses employers' business judgments." *Id.* (quotation marks and citation omitted). We have explained "minor differences between [an employee's] qualifications and those of a successful applicant are not sufficient to show pretext" and, instead, "the disparity in qualifications must be 'overwhelming.'" *Id.* at 1308-09 (citations omitted). Generally, "an employee must proffer evidence that shows each of the employer's justifications are pretextual."[9] *Id.* at 1310 (quotation marks and citations omitted). In making a

---

[9] As an exception, we have said that sometimes "a successful attack on part of the employer's legitimate, non-discriminatory explanation is enough to survive summary judgment even if one or more of the proffered reasons has not been discredited." *Jaramillo*, 427 F.3d at 1310. Instances sufficient to create a genuine issue of fact occur when:

(1) the reasons are so intertwined that a showing of pretext as to one raises a genuine question whether the remaining reason is valid; (2) the pretextual character of one explanation is so fishy and suspicious that a jury could find that the employer (or its decisionmaker) lacks

(continued...)

pretext determination, a court looks at the facts as they appeared to the person making the employment decision, *see Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1231 (10th Cir. 2000), because it is the employer's "perception ... that is relevant, not [the employee's] subjective evaluation of his own relative performance." *Kelley v. Goodyear Tire & Rubber Co.*, 220 F.3d 1174, 1178 (10th Cir. 2000) (quoting *Furr v. Seagate Tech, Inc.*, 82 F.3d 980, 988 (10th Cir. 1996)). In addition, we have repeatedly held a nonmovant's conclusory and self-serving affidavit, without other supporting evidence, is insufficient for the purpose of surviving summary judgment. *See Salguero v. City of Clovis*, 366 F.3d 1168, 1177 n.4 (10th Cir. 2004); *Garrett,* 305 F.3d at 1213; *Murray v. City of Sapulpa*, 45 F.3d 1417, 1422 (10th Cir. 1995).

Having considered the applicable standard of review and discrimination law, we turn to the district court's decision, which is extremely thorough, well-

---

[9](...continued)
all credibility; (3) the employer offers a plethora of reasons, and the [employee] raises substantial doubt about a number of them; (4) the [employee] discredits each of the employer's objective explanations, leaving only subjective reasons to justify its decision; or (5) the employer has changed its explanation under circumstances that suggest dishonesty or bad faith.

*Id.* (quotation marks and citations omitted). None of these circumstances has been demonstrated in this case.

articulated, and well-reasoned. For judicial economy, we find it unnecessary to recount it in its entirety and provide instead a summary sufficient to explain our affirmance. In ruling in favor of the government, the district court determined it provided a legitimate, non-discriminatory reason for selection of others over Mr. Martinez for the lead courier positions when it pointed to his incomplete answers on his application and his less-than-thorough responses to the KSA criteria, including numbering his responses out of order. Our own comparison of Mr. Martinez's application and KSA responses with those of the individuals selected shows Mr. Martinez's application was woefully deficient.

The district court also considered the panel and Mr. Griego's contention Mr. Martinez did not present himself very well at the interview; i.e., appearing nervous, slumping in his chair, putting his arms behind his head and his feet on the table, giving brief responses, and showing a lack of leadership skills. Based in part on these reasons, the district court noted Mr. Martinez received the second lowest evaluation out of the seven applicants and determined the government carried its burden of articulating legitimate, non-discriminatory reasons for its selection of the other applicants. We agree.

Having determined the government carried its burden of articulating

legitimate, facially non-discriminatory reasons for not promoting Mr. Martinez to the position of lead courier, we arrive at Mr. Martinez's argument of pretextual discrimination based on his claim of disputed material facts which prohibited summary judgment regarding the lead courier positions. Specifically, Mr. Martinez asserts, as he did in his affidavit, that he performed well in the interview and denies he slumped in his chair, put his hands behind his head, put his feet on the table, appeared nervous, provided brief answers, or demonstrated a lack of leadership skills. First, we find Mr. Martinez's self-serving affidavit, without other supporting evidence, unpersuasive. *See Salguero*, 366 F.3d at 1177 n.4; *Garrett,* 305 F.3d at 1213; *Murray*, 45 F.3d at 1422. Next, as the district court explained, the panel's perceptions of Mr. Martinez during his interview did not create the requisite material dispute of fact because a pretext challenge requires the court to look at the facts as they appeared to the persons making the employment decision, not the employee's subjective evaluation of his own performance. *See Kelley* 220 F.3d at 1178; *Kendrick* , 220 F.3d at 1231; *Furr*, 82 F.3d at 988. Alternatively, as the district court determined, even if Mr. Martinez's contentions did create a dispute of fact, they are immaterial, given the other shortcomings in his application, including his cursory application answers and KSA criteria responses. In other words, even without considering the facts disputed by Mr. Martinez, or viewing them in the light most favorable to him,

-14-

sufficient other legitimate, non-discriminatory reasons existed to select the others over Mr. Martinez.

With regard to the issue of subjectivity in the interview process, we have said pretext is typically inferred when "the criteria on which the employers ultimately rely are *entirely* subjective in nature." *Green v. New Mexico*, 420 F.3d 1189, 1195 (10th Cir. 2005) (quoting *Jones v. Barnhart*, 349 F.3d 1260, 1267-68 (10th Cir. 2003)). In this case, we agree with the district court that no inference of pretext exists, because the government did not rely solely on subjective considerations but based its employment decisions on objective factors such as Mr. Martinez's non-responsive and incomplete answers to the application questions and the KSA criteria, which were lacking in comparison with those of the successful applicants. Moreover, as the district court pointed out, subjective factors must play some role in considering individuals for upper level positions and do not, *per se*, constitute discrimination.[10] (Relying on *Pitre v. W. Elec. Co.*,

_____

[10] In addition, the district court considered and rejected Mr. Martinez's claim certain comments showed the government inferred a discriminatory bent against employees over forty. Specifically, Mr. Martinez asserted a manager of the Office of Secure Transportation referred to him and other "senior couriers" as the "old guys" at a June 2001 meeting, and another person made reference to "older guys who put in for other positions," although he could not recall who made that statement or others who might have heard it. The district court correctly determined that these comments were not sufficient to carry Mr.

(continued...)

-15-

843 F.2d 1262, 1271-72 (10th Cir. 1988).) For these reasons, we conclude Mr. Martinez did not carry his burden of showing a pretext of discrimination with regard to the lead courier positions.

As to the traffic management specialist positions, the district court determined the government provided a legitimate, non-discriminatory reason for its selection of others over Mr. Martinez when it pointed out he scored third lowest out of fourteen applicants based on the KSA response scoring system applied to each application. The district court noted Mr. Goodman, the person applying the scoring system, sufficiently explained the shortcomings in Mr. Martinez's responses to the KSA criteria as compared with those of the three individuals selected. After reviewing the KSA responses, we agree with the district court that "even a cursory comparison between [Mr. Martinez's] responses to the KSA's for the Traffic Management Specialist position, and the other applicants would convince any reasonable fact-finder that [the government's]

---

[10](...continued)
Martinez's burden of showing pretextual discrimination because he failed to show a connection between them and his non-selection, especially since the identified 2001 comment occurred after the government had already selected others over Mr. Martinez for the lead courier and traffic management specialist positions and the statement occurred in front of around 100 people. Mr. Martinez does not contest the district court's resolution of this point on appeal; therefore, we need not address it further, other than to note he has clearly not shown a connection between these comments and his non-selection.

reasons for not selecting [him] were legitimate and non-discriminatory." As a result, the government carried its burden of articulating legitimate, facially non-discriminatory reasons for not promoting Mr. Martinez to the position of traffic management specialist, thereby shifting the burden back to Mr. Martinez to prove by a preponderance of the evidence that the government's reasons are a pretext for unlawful discrimination. *See Jaramillo*, 427 F.3d at 1307.

While Mr. Martinez suggests the Energy Department used unauthorized, impermissible, subjective scoring in assessing the applications of the traffic management specialist positions, he provides no evidence to overcome his patently substandard responses to the KSA criteria, including his failure to address one of the six criteria considered important to the selection decision. In addition, as the district court pointed out, the KSA criteria reasonably required each applicant to demonstrate proficiency in responding to those criteria, their written responses provided a reasonable method to determine their proficiency and the best qualified applicant for the position, and the use of the three-step grading option to score each response separately was reasonable, even if it involved a certain degree of subjectivity. As to Mr. Martinez's contentions the human resources department did not preapprove the scoring criteria relied on by Mr. Goodman, the district court noted the person who would have approved it

provided an affidavit stating it was consistent with the rating guides or schedules applied to all applicants.

Finally, as to the documents attached to Mr. Martinez's affidavit which he claims the district court improperly failed to consider, we agree he did not properly authenticate them; therefore, it is unclear whether they are, as he purports, scoring sheets reflecting Mr. Goodman's ratings on the KSA criteria responses. However, as the district court pointed out, even if the scoring sheets are admissible, a review shows they do not support Mr. Martinez's position Mr. Goodman based his selection solely on impermissible, subjective factors. After considering all of the circumstances presented, it is clear Mr. Martinez has not produced evidence "of such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" by his employer for us to rationally conclude the proffered reasons for its selection of others over Mr. Martinez are unworthy of credence and that it did not act for the non-discriminatory reasons asserted. *Jaramillo*, 427 F.3d at 1308. Consequently, Mr. Martinez has failed to carry his burden of showing pretextual discrimination sufficient to overcome summary judgment with respect to the traffic management specialist positions.

### III.  Conclusion

For the reasons cited in the district court's November 12, 2004 decision and those articulated herein, we **AFFIRM** summary judgment in favor of the Secretary of the Department of Energy.

**Entered by the Court:**

**WADE BRORBY**
United States Circuit Judge