**F I L E D**

**UNITED STATES COURT OF APPEALS**

**February 15, 2007**

**FOR THE TENTH CIRCUIT**

STEPHEN R. MERRITT,

      Plaintiff-Appellant,

 v.

TELLABS OPERATIONS, INC., a
Delaware corporation,

      Defendant-Appellee.

No. 06-1198
(D.C. No. 04-CV-01565-EWN-PAC)
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **HOLMES**, **McKAY**, and **BRORBY**, Circuit Judges.

Stephen R. Merritt appeals the district court's grant of summary judgment

to his former employer, Tellabs Operations, Inc., on his claims of age

discrimination. We have jurisdiction under 28 U.S.C. § 1291, and we **AFFIRM**.

---

[*]     After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

**I.**

Tellabs sells products to telephone companies, including independent local exchange carriers (ILECs) such as Qwest Communications, Verizon, SBC Corporation, and BellSouth. In November 2000, Tellabs employed Mr. Merritt, then 47 years old, to head the Qwest sales team as a Vice President and General Manager in the North American Sales Organization. There were three other vice presidents in the ILEC sales group, one each for the Verizon, SBC, and BellSouth accounts.

The years 2001 and 2002 were difficult in the telecommunications industry, and Tellabs's ILEC sales dropped. In 2001, Mr. Merritt was given responsibility for a Canadian territory and apparently he met the quota for that territory until it was reassigned in September 2002. Qwest's purchasing diminished, however, and he met only 24.35% of his Qwest quota for 2001 and 23.21% for 2002. Aplt. App. I at 282. None of the other sales vice presidents met their quotas, with the most successful achieving 55.72% of his quota in 2001 and 60.89% in 2002. *Id.* No other ILEC sales vice president, however, had as low of a quota achievement as Mr. Merritt; each achieved over 50% of his quota in one of the two years, while Mr. Merritt achieved less than 25% in both years.

In October or November 2002, Charles Bernstein became Mr. Merritt's direct supervisor. Mr. Bernstein was supervised by Robert Pullen, who was in charge of Tellabs's sales groups. Mr. Bernstein began informing Mr. Merritt,

-2-

orally and in writing, of Mr. Bernstein's dissatisfaction with Mr. Merritt's performance soon after he began supervising Mr. Merritt. Mr. Pullen decided to end Mr. Merritt's employment with Tellabs. His employment was terminated on February 5, 2003, when he was 49 years old. Tellabs replaced him with an employee in his early forties who met the Qwest sales quota only after it was further reduced. Neither the replacement employee nor any of the other sales vice presidents, who apparently were all younger than Mr. Merritt, were selected for termination of employment.

Mr. Merritt sued under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621-634, and Tellabs moved for summary judgment. The district court held that Mr. Merritt had not presented direct evidence of discrimination. Relying on the *McDonnell Douglas* burden-shifting test applicable to cases involving indirect evidence, the district court held that Mr. Merritt had established his prima facie case and that Tellabs proffered a legitimate non-discriminatory reason for the termination by asserting Mr. Merritt's poor performance.[1] The district court then determined that Mr. Merritt had not created a genuine issue of material fact regarding pretext and granted Tellabs's motion for summary judgment on the ADEA claim. It also dismissed Mr. Merritt's state law claims without prejudice. Mr. Merritt appeals.

---

[1] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

## II.

### *Standard of Review*

We review a grant of summary judgment de novo. *Simms v. Okla. ex rel.*

*Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir.

1999). As this court has often explained:

> Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When applying this standard, we view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party.

*Id.* But the nonmoving party must have more than "a scintilla of evidence" in

support of his position: "an issue of material fact is genuine only if the

nonmovant presents facts such that a reasonable jury could find in favor of the

nonmovant." *Id.* (quotation omitted).

### *Analysis*

After rejecting Mr. Merritt's claim of direct evidence of discrimination, the

district court granted summary judgment at the third step of the *McDonnell*

*Douglas* burden-shifting framework. Thus, this appeal focuses on (1) whether

Mr. Merritt presented direct evidence of discrimination, and (2) whether he

presented sufficient evidence to create a genuine issue of material fact concerning

pretext.

## A. Direct Evidence

Mr. Merritt first argues that he presented direct evidence of discrimination in the form of a statement by Tellabs's CEO, Michael Birck, that was published in a newspaper article five weeks after Mr. Merritt's employment ended. In discussing the promotions of Edward Kennedy to chief operating officer for Tellabs's North American Operation and Anders Gustafsson to lead Tellabs's international business, Mr. Birck stated, "[w]e're reducing the average age of senior management with this announcement. . . . That's a good thing as far as I'm concerned." Aplt. App., Vol. I at 283. Mr. Birck, however, did not directly supervise Mr. Merritt and did not take part in the decision to terminate Mr. Merritt's employment. *Id.* at 80, ¶ 71; *id.*, Vol. II at 300, ¶ 71.

This statement reflects Mr. Birck's opinion. "Statements which on their face are expressions of personal opinion . . . can only support an inference of discrimination if the trier of fact finds the inference reasonable, and so constitute only circumstantial or indirect evidence of discrimination against the plaintiff." *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1136 (10th Cir. 2000) (quotation omitted). At best, then, the Birck statement would be indirect evidence rather than direct evidence. Consequently, the district court did not err in proceeding to the *McDonnell Douglas* framework applicable to cases involving indirect evidence of discrimination. *See id.* at 1137.

## B. Pretext

A plaintiff may show pretext through various means:

> Under Tenth Circuit precedent, pretext may be shown by "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." A plaintiff can make a showing of pretext with evidence that the defendant's stated reason for termination was false.

*Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1125 (10th Cir. 2005) (quoting *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997) (further citation omitted)). "Evidence of pretext may include 'prior treatment of plaintiff; the employer's policy and practice regarding minority employment (including statistical data); disturbing procedural irregularities (e.g., falsifying or manipulating . . . criteria); and the use of subjective criteria.'" *Jaramillo v. Colo. Judicial Dept.*, 427 F.3d 1303, 1308 (10th Cir. 2005) (quoting *Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1217 (10th Cir. 2002) (further citation omitted)).

On appeal, "Mr. Merritt concedes that he failed to meet his sales quota and that sales performance *could have* motivated his dismissal; however, an illegal motivation, i.e., age discrimination, was the *more likely* reason for his termination." Reply Br. at 2. He points to (1) other evidence of his good performance, despite extremely difficult market conditions; (2) Tellabs's

favorable treatment of younger employees, including his replacement and the other ILEC vice presidents, and an alleged pattern of replacing older employees with younger persons; (3) the Birck statement and age-related comments and actions by Mr. Merritt's supervisors; and (4) procedural irregularities in his termination. But whether taken singly or collectively, these issues do not create a genuine issue of material fact regarding pretext.

### 1. Performance

Mr. Merritt contends that, although he did not meet his Qwest quota, he demonstrated good performance in other areas of his job. But it is the employer defendant's "perception . . . that is relevant, not the [employee] plaintiff's subjective evaluation of his own relative performance." *Kelley v. Goodyear Tire & Rubber Co.*, 220 F.3d 1174, 1178 (10th Cir. 2000) (quotation and alteration omitted). It was Tellabs's prerogative to determine which areas of performance were most important. Further, in the district court Mr. Merritt conceded that his sales performance "could have been better" and he was "'not bringing the numbers in.'" Aplt. App., Vol. I at 71, ¶ 15; *id.*, Vol. II at 297, ¶ 15; *id.*, Vol. I at 72, ¶ 16; *id.*, Vol. II at 297 ¶ 16. On appeal, he concedes that his sales performance "*could have* motivated his dismissal." Reply Br. at 2. His subjective evaluations of his performance in other aspects of his job are insufficient to create a genuine issue of material fact as to whether Tellabs's asserted reasons for terminating his employment are pretextual.

### 2. Treatment of Younger Employees

Mr. Merritt argues that Tellabs demonstrated a pattern of replacing older employees with younger employees. He also highlights the favorable treatment given younger employees, including his replacement and other ILEC sales-team leaders.

While a pattern of replacing older employees with younger persons may constitute a "thread of evidence" to support a finding of discrimination, *Greene v. Safeway Stores, Inc.*, 98 F.3d 554, 561 (10th Cir. 1996), here there was insufficient evidence to establish a pattern. As the district court noted, Mr. Merritt submitted only his own deposition testimony to support the alleged pattern of replacements, and his testimony generally was based on "secondhand information," "scuttlebutt," "water-cooler type conversations" and his own perceptions and opinions. Aplt. App., Vol. I at 77-78, ¶¶ 51-58; *id.*, Vol. II at 299-300, ¶¶ 51-58. Such unsupported information is insufficient to establish pretext. *See Jaramillo*, 427 F.3d at 1314 ("Hearsay testimony that would not be admissible at trial is not sufficient to defeat a motion for summary judgment.").

Mr. Merritt also contends that his younger replacement and the younger ILEC sales vice presidents were treated more favorably than he was, because their employment was not terminated even though they also failed to meet their quotas. But Mr. Merritt's sales performance was worse than the performance of these

employees, which provides a basis other than age for distinguishing Tellabs's treatment of them.

Moreover, in addition to the failure to meet the Qwest quota, Tellabs identified other performance deficiencies underlying the termination of Mr. Merritt's employment, including his failure to sell new products to Qwest. Aplt. App., Vol. I at 253, 265. The record does not establish that the other employees were cited for similar conduct, which again provides a basis for distinguishing Tellabs's decision to terminate Mr. Merritt's employment while retaining the other employees. Thus, Tellabs's alleged failure to dismiss younger employees does not create a genuine issue of fact concerning pretext.

### 3. Age-Related Comments and Actions

Mr. Merritt also points to several age-related remarks and actions by Tellabs personnel. In addition to the Birck statement, he avers that Mr. Bernstein and Mr. Pullen promoted a youth movement by giving accolades to Mr. Merritt's younger colleagues, but not to him, and by conducting sales meetings geared to younger salespeople. He also notes that Edward Kennedy told him that Mr. Pullen and Mr. Bernstein perceived him to be part of the "'old guard'" and that he "'should possess more of the traits of this young Ben Shat.'" Aplt. Br. at 33 (quoting Aplt. App. II at 422-23).

Given that Mr. Birck's statement reflects a personal opinion and that Mr. Birck did not participate in terminating Mr. Merritt's employment, the district

court did not err in characterizing the Birck comment as a "stray remark" that does not satisfy Mr. Merritt's burden of production. "Isolated comments, unrelated to the challenged action, are insufficient to show discriminatory animus in termination decisions." *Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 531 (10th Cir. 1994); *see also Heno v. Sprint/United Mgmt. Corp.*, 208 F.3d 847, 856 (10th Cir. 2000) ("[S]tray . . . comments should typically not be admitted unless the plaintiff can link them to personnel decisions or the individuals making those decisions."). Without more, Mr. Merritt's subjective belief that he was within the class of "senior management" identified by Mr. Birck does not establish the necessary link between comment and termination.

Likewise, Mr. Merritt's allegations about Mr. Pullen's and Mr. Bernstein's promoting a youth movement are too attenuated to show pretext in connection with the termination. Mr. Merritt's belief that the training sessions were inappropriate because the supervisors made statements like "what motivates you as a young man" and used other "touchy feely" phrases is his subjective opinion. Aplt. App., Vol. II at 306, ¶ 38; *id.*, Vol. I at 76, ¶ 42. And given that Mr. Merritt's performance ranked lower than the other sales vice presidents, the fact that Mr. Bernstein praised the other employees but not Mr. Merritt during Monday morning revenue calls is not probative of age discrimination. The other incidents to which Mr. Merritt refers, such as Mr. Bernstein's occasional use of the terms "young guys" or "younger guys," *id.*, Vol. I at 76, ¶¶ 45-47; *id.*, Vol. II

at 306, ¶¶ 39-40, appear to be stray remarks that would be insufficient to allow a jury to find for Mr. Merritt.

As for Mr. Kennedy's statements, they are hearsay, and thus they cannot defeat summary judgment. *Jaramillo*, 427 F.3d at 1314.

### 4. Procedural Irregularities

Finally, Mr. Merritt argues that his termination involved disturbing procedural irregularities because Tellabs failed to follow its written Employee Guidelines, which provide for progressive discipline "[i]n most cases" of poor performance. Aplt. App., Vol. I at 183-84. This court has recognized that "'disturbing procedural irregularities'" can constitute evidence of pretext, *Jaramillo*, 427 F.3d at 1308 (quoting *Garrett*, 305 F.3d at 1217), and that "deviations from normal company procedure" can be a disturbing procedural irregularity, *Garrett*, 305 F.3d at 1220.

Tellabs's failure to follow the Employee Guidelines, however, is not such an irregularity that it constitutes evidence of pretext, because Tellabs was not obligated to follow the Employee Guidelines in every case. *See Jaramillo*, 427 F.3d at 1312-13. Further, consistent with the progressive disciplinary policy, Mr. Merritt was well aware of his supervisors' dissatisfaction with his performance at least several months prior to the termination of his employment. Mr. Merritt originally was selected for layoff in August 2002 before being removed from the layoff list. Aplt. App., Vol. I at 72, ¶ 19; *id.*, Vol. II at 297,

¶ 19.  Mr. Merritt admits that every time Mr. Bernstein met with him, Mr. Bernstein told him that "he must meet his sales quota numbers," and Mr. Bernstein told him three or four times between November and December 2002 that "his performance had to improve."  *Id.*, Vol. I at 72-73, ¶¶ 21, 23; *id.*, Vol. II at 297-98, ¶¶ 21, 23.  In December, Mr. Bernstein sent Mr. Merritt at least two e-mail messages relaying his concern about Mr. Merritt's performance and the importance of meeting his year-end quota.  *Id.*, Vol. I at 73, ¶¶ 24-25; *id.*, Vol. II at 298, ¶¶ 24-25.  In January 2003, Mr. Merritt and Mr. Bernstein met to discuss Mr. Merritt's performance.  *Id.*, Vol. I at 73, ¶ 26; *id.*, Vol. II at 298, ¶ 26.  Thus, Mr. Merritt was given notice of Tellabs's expectations and opportunities to improve, even though Tellabs chose not to employ formal progressive discipline.

## III.

The judgment of the district court is **AFFIRMED**.

Entered for the Court

Jerome A. Holmes
Circuit Judge

-12-