## NEGLIGENCE IN DRAWING A DRAFT.

Court of Appeals for Hamilton County.

THE SECOND NATIONAL BANK OF VINCENNES v. AMY R. CAMPBELL.*

Decided, October Term, 1914.

*Banks and Banking—Draft Made to Read for a Larger Amount and is Accepted—Bank Negligent in so Drawing the Instrument as to Make the Change Possible Without Exciting Suspicion.*

Whether a draft which had been "raised" and was accepted for the larger amount, had been so negligently drawn as to make the issuing bank liable for the full amount by reason of the fact that the alteration was possible without exciting the suspicion of a reasonably careful man, is a question for the jury, and an unequivocal finding as to such negligence will not be disturbed by a reviewing court.

*Charles B. Wilby,* for plaintiff in error.
*Charles W. Baker,* for defendant in error.

JONES, (E. H.), J.; JONES, (O. B.), J., concurs; SWING, P. J., not sitting.

This action was originally brought by Amy R. Campbell against the Second National Bank of Vincennes, praying for judgment for $360 upon a draft drawn by said bank, which she cashed for the payee.

The draft when tendered to her was in the sum of $360. She accepted it in payment of a tuition fee of $100, and paid the difference to the prospective pupil of her business college in cash. She recovered judgment below against the bank for $260 with interest, the evidence showing that she really never parted with the remaining consideration, the matriculation in the college being only a ruse by which Miss Campbell was induced to honor the draft.

---

*Affirming *Campbell* v. *Second National Bank*, 17 N.P.(N.S.), 47; motion to require the Court of Appeals to certify its record overruled by the Supreme Court February 9, 1915.

The judgment below in favor of the defendant in error rests upon the allegations of the second cause of action of her amended petition, which are as follows:

"Plaintiff says that defendant is a corporation under the laws of United States, and is and was doing banking business at Vincennes, Indiana.

"Plaintiff says that on the 27th day of September, 1910, at Vincennes, Indiana, the defendant drew a draft on the Fort Dearborn National Bank of Chicago,, Illinois, and delivered it to a man purporting to be one E. J. Andrews. That said draft was on the usual forms used by the defendant in drawing such drafts; was made payable to the order of one M. J. Andrews, and this plaintiff is advised that the defendant claims that the said original draft was drawn for $3.00 only. ·

"Plaintiff says, however, that the said draft was so negligently and unskillfully drawn and made out as that it permitted its alteration without detection, and whatever was the .amount of the original draft it was so carelessly and negligently drawn and written in and made out, and without the usual safe-guards ordinarily used in connection with the drawing of such drafts, that the said draft was susceptible of being altered without detection, and it was so altered by the said M. J. Andrews, or some one for him, so that the said draft came to be in the following form and shape:

"The Second National Bank of Vincennes,
        "Vincennes, Indiana, Sep. 27, 1910, No. 25296.
"Pay to the order of M. J. Andrews ............ $360.00
three hundred sixty & No/100 ..............dollars.
   To Ft. Dearborn National Bank,
        Chicago, Ill.                    J. T. Boyd, *Cashier*.
            Not over five hundred dollars.
"Endorsed:  M. J. Andrews,
            "A. R. Campbell,

"Paid through Chicago Clearing House,
                    "Oct. 1, 1910.
                    "Mail.
            "First National Bank,
"Pay First National Bank, Chicago, Ill.
                    or order,
"Prior endorsements guaranteed,
        "Fourth National Bank, Cincinnati, O.
                "Charles Bartless, *Cashier*.

"Plaintiff says that, believing said draft to be genuine and for three hundred and sixty ($360) dollars and the said M. J. Andrews having endorsed the same, as did this plaintiff, she deposited it for collection in the bank in Cincinnati, where she kept her account; but the said draft was refused payment by the Second National Bank of Vincennes, which said bank now claims that it never issued said draft for the said sum of three hundred and sixty ($360) dollars.

"Plaintiff says that, by reason of the carelessness and negligence of the defendant company, the drawer of said draft, in drawing a draft that was so carelessly and negligently drawn that it could be altered and changed without detection, she was deceived into taking said draft and giving its equivalent as aforesaid, all to her damage in the sum of three hundred and sixty ($360) dollars, and without fault upon her part."

These allegations were denied in the amended answer in which it is averred that "the draft was carefully drawn and protected by the use of the Todd protectograph, a device in use by most banks for the prevention of alteration of checks, which is the best device for that purpose known to bankers, and is the safeguard most commonly used in connection with the drawing of such drafts, and that said draft was altered without fault on its part."

Thus, the issue of the care or want of care by the bank in drawing the draft, was made by the pleadings in the case. The jury had that one question before it for determination; and in addition to their general verdict the jurors were required to answer certain interrogatories propounded by the defendant below. The interrogatories and answers are as follows:

"1. Was the bank negligent in drawing and issuing that draft?

"Answer: Yes. L. H. BATES, Foreman.

"2. If your foregoing answer shall be 'yes' then state in what respect the bank was negligent.

"Answer: By not having used the necessary precaution, to-wit: the evidence produced in this case showing the draft marked 'Exhibit A' in its present appearance to us does not show that same was stamped more than once by the protectograph device and that the draft does show it was stamped at least once, 'Not over five hundred dollars' by the above named device, upon this

evidence and testimony given that this device was used by the defendant in issuing the draft they in our opinion were guilty of negligently preparing the draft in question.

"L. H. Bates, *Foreman.*"

It is claimed, however, that this finding of the jury is not supported by the evidence, and in support of this contention this court has been provided with two magnifying glasses and a Todd protectograph in an effort to show that there has been a change in the protectograph impression on the draft since it was issued by the bank, and that the jury was mistaken in finding to the contrary. These aids in the determination of the issue, together with the draft, were in possession of the jury during its deliberations. Their clear and unequivocal answer to the second interrogatory amply supports the allegation of the amended petition as quoted above, and leaves no doubt as to the position of the jury upon this simple yet important question of fact. We are not aware of any law or rule which would authorize this or any other court to interfere with this finding of fact by the jury, unless it was manifestly against the weight of the evidence. A great many witnesses were called to testify upon the point upon which the jury passed, but after all, the principal item of evidence is the draft itself. While its appearance satisfied some of the witnesses that the first protectograph stamping had been changed, there was a conflict, even among the witnesses upon this point. All possible assistance was rendered the jury in determining this issue. From its verdict there is no appeal. It would be a palpable usurpation of the province of the jury for a court to interfere.

The questions of law involved in this controversy have apparently not often arisen, especially in our state. The judgment against the bank, assuming the facts to be as found by the jury, was warranted by the law as well stated in *Daniel on Negotiable Instruments*, 6 Ed., Volume 2, Section 1405:

"When the drawer of the bill or maker of note has himself, by careless execution of the instrument, left room for any alteration to be made, either by insertion or erasure, without defacing it, or exciting the suspicions of a careful man, he will be liable

upon it to any *bona fide* holder without notice when the opportunity which he has afforded has been embraced, and the instrument filled up with a larger amount or different terms than those which it bore at the time he signed it. The true principle applicable to such cases is that the party who puts his paper in circulation, invites the public to receive it of any one having it in possession with apparent title, and he is estopped to urge an actual defect in that which, through his act, ostensibly has none It is the duty of the maker of the note to guard not only himself but the public, against frauds and alterations by refusing to sign negotiable paper made on such a form as to admit of fraudulent practices upon them with ease and without ready detection. The inspection of the paper itself furnishes the only criterion by which a stranger to whom it is offered can test its character, and when the inspection reveals nothing to arouse the suspicions of a prudent man, he will not be permitted to suffer when there has been an actual alteration.''

See also: *Harvester Co.* v. *McLean,* 57 Wis., 258; *Garrard* v. *Hadden,* 67 Pa. St., 82; *Zimmerman et al* v. *Rote,* 75 Pa. St., 188; *Brown* v. *Reed,* 79 Pa. St., 370.

The fifth paragraph in the syllabus of the last case cited is authority for the claim that the issue that we have here is one for the jury. It reads as follows:

''The paper in this case was part of a contract so skillfully arranged that if the portion on the right end were cut off there would be left a negotiable note. *Held:* That whether there was negligence in the maker in executing such paper, was for the jury.''

We find no error in the record to the prejudice of plaintiff in error, and the judgment will therefore be affirmed.