**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 18-2576
_____

RAYSA ALCANTARA,
            Appellant

v.

AEROTEK, INC.
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
(D.C. No. 1-16-cv-02353)
District Judge: Hon. Matthew W. Brann
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
March 18, 2019
_____

Before: SHWARTZ, KRAUSE, and BIBAS, Circuit Judges.

(Filed: March 25, 2019)
_____

OPINION[*]
_____

SHWARTZ, Circuit Judge.

    Plaintiff Raysa Alcantara appeals the District Court's order granting summary

_____

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

judgment in favor of Defendant Aerotek, Inc. on her employment discrimination claims. For the reasons that follow, we will affirm.

I[1]

A

Aerotek, a recruiting company that provides temporary staffing ("contractors") to client companies, hired Alcantara, a Hispanic woman, as an Administrative Assistant ("assistant") in the Field Support Group ("Support Group") of its Lebanon, Pennsylvania office. The Lebanon Support Group includes an assistant and a Consumer Support Associate ("associate"), both of whom are supervised by a Customer Support Supervisor ("supervisor"). The assistant provides customer service and administrative support to clients and contractors and assists with office audits and compliance requirements. The associate provides local sales teams with human resources support and serves as the primary liaison to Aerotek's corporate office.

Alcantara worked closely with and occasionally covered for associate Courtney Black Davila. On her own initiative, Alcantara also performed translation services for Spanish-speaking contractors.[2]

---

[1] Because we are reviewing an order granting summary judgment, we view the facts and make all reasonable inferences in Alcantara's favor. Hugh v. Butler Cty. Family YMCA, 418 F.3d 265, 266-67 (3d Cir. 2005). Except as indicated, the facts in this section are undisputed.

[2] Davila testified that having Alcantara translate was more efficient and avoided losing contractors who never returned with their own translators. Michael Dougherty, Director of Business Operations for the Lebanon office, testified that he was aware that Alcantara performed translation services, and that "[i]t's encouraged that [Aerotek] have Admins that are bilingual." App. 412.

2

When Christina Sult Auker took over supervisory responsibilities for the Support Group, Alcantara claims that Auker ordered her to stop translating and to tell contractors who did not speak English to return with their own translators. Auker does not recall instructing Alcantara to stop translating, and testified that, as an assistant, Alcantara "struggled with attention to detail and time management." App. 268.

Eventually, Davila transferred to another Aerotek office, and Alcantara applied for the associate position. Auker and Michael Dougherty, Director of Business Operations for the Lebanon office, interviewed Alcantara for the job. They testified that Alcantara performed poorly in the interview because she was not prepared, did not appear to take the interview seriously, and, despite having worked closely with Davila, struggled to describe the associate's responsibilities. For her part, Alcantara claims that she "interviewed well," App. 328, and that she did not ask questions during the interview because she "kind of already knew about the position," App. 329.

Though her interview was "not successful," Auker took the unusual step of offering Alcantara a month-long "working interview," App. 129 ¶ 18, during which Alcantara could demonstrate that she "can handle the duties of the [associate] role," App. 196. Before the working interview began, Auker told Alcantara that "there is no guarantee that [she] will be promoted." App. 196. Alcantara received a training handbook for the associate position, but claims she did not receive "formal training." App. 406. Auker, however, testified that during the working interview Alcantara

Alcantara testified that no one at Aerotek made derogatory comments regarding her race or national origin.

3

completed training modules. In addition, Alcantara had daily contact with Davila and weekly meetings with Auker. Nonetheless, Alcantara asserts that Davila and Auker were unable to sufficiently support her in the new role. Alcantara, however, did not ask for help during the working interview, and does not recall whether she responded to Auker's repeated offers of assistance.

During the working interview, Alcantara performed both the associate and assistant roles. Alcantara claims that Auker treated her differently from non-Hispanic associates, including by not allowing her to work overtime.[3] However, Auker testified that she granted all overtime that Alcantara requested.

At the end of the working interview, Auker decided not to promote Alcantara because of repeated errors and time management problems. At the time, Alcantara understood that she did not get the promotion because of "time management" problems.[4] App. 160. In addition, she conceded that she made multiple errors during the working interview, but nonetheless maintains that she "did great," App. 334:7-15; see also App. 304 ¶¶ 29-30 (claiming she "completed the working interview very well").

Aerotek thereafer posted the associate position externally and hired Desiree Zeller, a Caucasian woman. Alcantara challenges Aerotek's claim that "Zeller had the requisite management, attention to detail, and interpersonal skills and experience in customer

---

[3] After Alcantara was terminated, Desiree Zeller, who, as explained herein, was hired as the associate, handled both the assistant and associate duties, and was approved to work overtime.

[4] Alcantara also did not initially indicate that she believed she was discriminated against.

4

service for the [associate] position," because the only post-college job Zeller ever told Davila or Alcantara about was babysitting.[5] App. 113 ¶ 41. Alcantara did not witness Zeller make any errors during the month they worked together.

Alcantara was terminated in October 2015 for interfering with Aerotek's background check process. When a client requires a background check for a contractor, Support Group employees provide the contractor's information to Sterling Talent Solutions. If there is any additional investigation after the background check—called an Individual Assessment—Sterling and the contractor are supposed to communicate directly. Aerotek's unwritten "company policy is that the [contractor] should respond directly [to Sterling] with the [Individual Assessment] form without assistance. If . . . they cannot . . . , the [Support Groups] are told to have as little contact with that as possible," App. 250, and may not help contractors fill out the forms or keep copies of them.[6] Alcantara claims that while there was a "preference" for Support Group staff not to be involved in the Individual Assessment process, App. 308 ¶ 61, Support Group staff could verbally assist the contractor with filling out the forms and email or fax the forms to Sterling.

On October 20, 2015, the compliance supervisor in Aerotek's Background Investigations Department was alerted that Alcantara had submitted the same Individual

---

[5] Zeller testified that she is a graduate of Pennsylvania State University with a bachelor's degree in human development and family studies and had post-college experience working as a nanny, a day care teacher, and in a sporting goods store.

[6] Aerotek's Employee Conduct and Work Rules, which Alcantara signed when she started, prohibit employees from "[d]isclosing business secrets or confidential information." App 135.

Assessment forms for one contractor for two separate positions. The compliance supervisor informed Auker, who in turn, "confronted" Alcantara. App. 132 ¶¶ 38-39. Alcantara admitted to faxing and emailing the contractor's paperwork to Sterling. Auker terminated Alcantara because she breached security protocols by emailing these forms.

Alcantara identified five individuals who allegedly emailed similar information and were not disciplined: Davila, Zeller, two recruiters, and an assistant named Josei Martinez. Davila testified that she verbally assisted contractors filling out the Individual Assessment forms and emailed and faxed the forms to Sterling, that she was never told that this process was improper, and that she trained Alcantara to do the same. Auker declared that prior to this lawsuit she was unaware that Davila did this. Zeller testified that she was permitted to help contractors by faxing Individual Assessment forms but barred from scanning and emailing them and that she believes this policy was in the background training module. The two recruiters allegedly emailed information to clients. Martinez, who is also Hispanic, emailed forms to Sterling, but she reports to a different supervisor.

B

Alcantara filed a complaint against Aerotek in the United States District Court for the Middle District of Pennsylvania alleging race discrimination under Title VII[7] and 42

---

[7] In her complaint, Alcantara references both race and national origin but asserts only that she was discriminated against because she is Hispanic, which is a racial classification. See, e.g., Adarand Constructors, Inc. v. Pena, 515 U.S. 200, 260 n.16 (1995) (Thomas, J. concurring) (noting that groups including Hispanic Americans are discriminated against on the basis of race).

U.S.C. § 1981[8] related to Aerotek's alleged failure to promote and wrongful termination.

Following discovery, Aerotek moved for summary judgment, which the Court granted. Alcantara v. Aerotek, Inc., No. 1:16-CV-2353, 2018 WL 3007528 (M.D. Pa. June 15, 2018). With respect to the failure to promote claims, the Court determined that: (1) Alcantara had failed to establish a prima facie case because the evidence showed that she was not qualified for the associate position, and there were no circumstances that gave rise to an inference that Aerotek intentionally discriminated against her by not promoting her, and (2) even if she had made out a prima facie case, Alcantara failed to rebut Aerotek's proffered justification for not promoting her—that she had performed poorly in both the interview and working interview. Id. at *15-22. The Court dismissed Alcantara's termination claim because she failed to show either that the circumstances gave rise to an inference that Aerotek had discriminatory intent, or that the stated reason for her firing—intervening in the Individual Assessment process—was pretextual. Id. at *23-25, *25-26. Alcantara appeals.

II[9]

_____

[8] Because Alcantara did not plead violations of the Pennsylvania Human Relations Act ("PHRA"), see Dkt. No. 1, the District Court erred in resolving such a claim, Alcantara v. Aerotek, Inc., No. 1:16-CV-2353, 2018 WL 3007528, at *13 (M.D. Pa. June 15, 2018). This error is harmless because even if Alcantara's complaint included a PHRA claim, such a claim would fail because it is coextensive with a claim under Title VII. Atkinson v. LaFayette Coll., 460 F.3d 447, 454 n.6 (3d Cir. 2006).

[9] The District Court had jurisdiction under 28 U.S.C. §§ 1331, 1343. We have jurisdiction under 28 U.S.C. § 1291. Our review of a district court's order granting summary judgment is plenary, Mylan Inc. v. SmithKline Beecham Corp., 723 F.3d 413, 418 (3d Cir. 2013), and we apply the same standard, viewing facts and making all reasonable inferences in the non-movant's favor, Hugh v. Butler Cty. Family YMCA, 418 F.3d 265, 266-67 (3d Cir. 2005). Summary judgment is appropriate where "there is

## A

Title VII prohibits an employer from discriminating on the basis of race. 42 U.S.C. § 2000e-2(a)(1). Section 1981 prohibits racial discrimination in making and enforcing contracts. 42 U.S.C. § 1981. Title VII and Section 1981 racial discrimination claims have the same elements and we analyze both under the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973). See Carvalho-Grevious v. Del. State Univ., 851 F.3d 249, 256-57 (3d Cir. 2017).

Under the McDonnell Douglas framework, Alcantara must first establish a prima facie case of employment discrimination, Doe v. C.A.R.S. Protection Plus, Inc., 527 F.3d 358, 364 (3d Cir. 2008), by demonstrating she "(1) was a member of a protected class . . . , (2) was qualified for the position at issue, (3) suffered an adverse employment action[,] and (4) was ultimately replaced under circumstances that support an inference of unlawful discrimination," In re Tribune Media Co., 902 F.3d 384, 402 (3d Cir. 2018) (alterations in original) (internal quotation marks and citations omitted). If she makes out a prima facie case, then "the burden . . . shift[s] to [Aerotek] to articulate some legitimate, nondiscriminatory reason for" the adverse employment action. Iadimarco v. Runyon, 190

---

no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute "is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party, and a factual dispute is material only if it might affect the outcome of the suit under governing law." Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). The moving party is entitled to judgment as a matter of law when the non-moving party fails to make "a sufficient showing on an essential element of her case with respect to which she has the burden of proof." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

F.3d 151, 157 (3d Cir. 1999) (quoting McDonnell Douglas, 411 U.S. at 802). Finally, Alcantara can rebut Aerotek's proffered reason if she "establish[es] by a preponderance of the evidence that the employer's proffered reasons were merely a pretext for discrimination, and not the real motivation for the unfavorable job action." Sarullo v. U.S. Postal Serv., 352 F.3d 789, 797 (3d Cir. 2003). Pretext can be shown by "either (i) discrediting the proffered reasons, either circumstantially or directly, or (ii) adducing evidence, whether circumstantial or direct, that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994) (emphasis omitted).

For the reasons set forth herein, even if Alcantara made a prima facie case for both her failure to promote and termination claims, Aerotek has provided legitimate nondiscriminatory reasons for its decisions and Alcantara has not shown that they are pretextual. See In re Tribune Media Co., 902 F.3d at 402 (assuming, without deciding, that plaintiff has proven prima facie case of racial discrimination and resolving the case at step three of the McDonnell Douglas framework).

B

Aerotek has supplied a legitimate non-discriminatory reason for its decision not to promote Alcantara: she performed poorly during both the interview and the month-long working interview. Alcantara disbelieves these reasons but her unsupported assertions that she "interviewed well," App. 328, and "did great" during the working interview, App. 334, do not prove pretext, In re Tribune Media Co., 902 F.3d at 393; see Kelley v. Goodyear Tire & Rubber Co., 220 F.3d 1174, 1178 (10th Cir. 2000) ("[I]t is the

9

manager's perception of the employee's performance that is relevant, not plaintiff's subjective evaluation of his own relative performance." (internal quotation marks and citation omitted)).  Additionally, Alcantara's admission that she made multiple errors during the working interview "lends credibility to [Aerotek's] rationale" for not promoting her, In re Tribune Media Co., 902 F.3d at 403 (rejecting claimed reasons for adverse action were pretext where plaintiff admitted to engaging in prohibited conduct).

Alcantara also fails to show that "an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Id. at 402 (quoting Fuentes, 32 F.3d at 764).

First, as Aerotek rightly observes, the fact that Auker has not supervised other Hispanic employees at Aerotek does not suggest pretext.

Second, even if Auker told Alcantara not to translate for Spanish-speaking contractors, such an instruction is not necessarily evidence of racial bias since there are other plausible explanations for it.  Moreover, like stray remarks made by decision-makers unrelated to the decision-making process, this instruction, standing alone, is not sufficient to establish discriminatory motive.  See C.A.R.S. Protection Plus, Inc., 527 F.3d at 368.

Third, Alcantara's claim that only she was denied overtime while performing both the assistant and associate roles is not supported by the record.  It is true that both Davila and Zeller performed both roles and were approved to work overtime.  Auker, however, testified that she granted all overtime Alcantara requested, and Alcantara did not provide any evidence to the contrary.

Fourth, even if Zeller were less qualified than Alcantara, her hiring does not show pretext given that Alcantara conceded that she had made multiple errors during her working interview, and Alcantara adduced no evidence that Zeller made any errors.

Accordingly, because Alcantara failed to carry her burden to establish pretext, the District Court properly granted summary judgment to Aerotek on Alcantara's failure to promote claims.

C

Alcantara's termination claim also fails. Aerotek has supplied a legitimate non-discriminatory reason for Alcantara's termination, and Alcantara has failed to show this reason was pretextual.

Aerotek states that it fired Alcantara for "interference in the Individual Assessment process." App. 114 ¶ 43. There is no dispute that Alcantara emailed and faxed Individual Assessment forms for a specific contractor on at least two occasions. Although the parties dispute whether there is a policy that Support Group employees may not email such forms, the precise scope of the policy and the extent to which Alcantara broke it is immaterial in this case and does not preclude summary judgment. See Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) ("[A] factual dispute is material only if it might affect the outcome of the suit under governing law."). More specifically, "[a] violation of company policy can constitute a pretext for unlawful discrimination if others similarly situated also violated the policy with no adverse consequence." Goosby v. Johnson & Johnson Med., Inc., 228 F.3d 313, 322 (3d Cir. 2000) (citation omitted). The determination of whether another employee is similarly

situated is a "fact-intensive inquiry." Monaco v. Am. Gen. Assur. Co., 359 F.3d 296, 305 (3d Cir. 2004). Alcantara's assertion that she was treated more harshly than other employees who violated security protocols and that such treatment shows pretext fails because she has identified no comparators.

First, Davila and Zeller are not similarly situated. While Davila confirmed that she also emailed Individual Assessment forms to Sterling for contractors, Auker was unware that Davila had been doing so. If Aerotek, through Auker, was unaware that Davila emailed Individual Assessment forms against company policy, then it cannot be said to have intentionally treated Alcantara differently for doing so. See E.E.O.C. v. Kohler Co., 335 F.3d 766, 781 (8th Cir. 2003) (observing that "no inference of retaliation can be established" where employer "was unaware of similarly situated employees when he discharged [plaintiff]"). Thus, Davila cannot serve as a comparator. Zeller is also not a comparator because there is no evidence she emailed Individual Assessment forms and she therefore did not engage in like conduct. Thus, the fact that Aerotek took no action against Davila and Zeller does not reflect that its action against Alcantara was racially motivated.

Second, the non-Hispanic recruiters who allegedly violated Aerotek policy by sending clients spreadsheets with contractor information including social security numbers are not similarly situated because they "hold[] . . . different job[s] in a different department," Mandel v. M & Q Packaging Corp., 706 F.3d 157, 170 (3d Cir. 2013), report to a different supervisor, and their alleged conduct of sending contractor

12

information to clients is not the same as Alcantara's emailing of Individual Assessment forms to Sterling, see In re Tribune Media Co., 902 F.3d at 403.

Finally, Martinez is not a comparator. For starters, Martinez reports to a different supervisor. See id. Moreover, Martinez and Alcantara are both Hispanic and both engaged in the same conduct but Martinez was not fired. Aerotek's treatment of Martinez, who is in the same protected class as Alcantara and was treated favorably, thus undermines Alcantara's claim that her termination was racially motivated. See Jalil v. Avdel Corp., 873 F.2d 701, 708 (3d Cir. 1989) (stating that evidence other employees were not discharged for certain behavior is "inadequate" where "plaintiff failed to show that the [other] employees were not members of the protected class").

In sum, because "there is no comparator that suggests [Aerotek's] decision was guided by racial bias . . . . [Alcantara] cannot show that [Aerotek's] reason for firing [her] was pretextual." In re Tribune Media Co., 902 F.3d at 404. Thus, the District Court correctly granted Aerotek's summary judgment motion on Alcantara's termination claim.[10]

III

For the foregoing reasons, we will affirm the District Court's order granting summary judgment for Aerotek.

---

[10] Alcantara's claim that she can prevail under the "mixed-motive" analysis set forth in Price Waterhouse v. Hopkins, 490 U.S. 228 (1989), is without merit. As the District Court correctly determined, Alcantara failed to demonstrate that discriminatory animus was a "motivating factor" in the adverse employment decisions, and therefore she cannot prevail under the mixed motive approach either. Alcantara, No. 1:16-CV-2353, 2018 WL 3007528, at *27.